GROSVENOR CALKINS *vs.* THE WIRE HARDWARE COMPANY & others.

Suffolk.    January 11, 1929. — April 6, 1929.

Present: CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Corporation,* Stockholder's liability, Director's liability, Dissolution, Officers and agents. *Contract,* What constitutes, Implied, Ratification. *Equity Pleading and Practice,* Amendment. *Statute,* Construction. *Election. Estoppel. Equity Jurisdiction,* Suit by minority stockholders, Laches. *Evidence,* Presumptions and burden of proof. *Agency,* Existence of relation, Ratification of acts of agent. *Attorney at Law.*

A judge of the Superior Court, during the hearing of a suit in equity under the provisions of G. L. c. 156, §§ 35, 37, by one who had obtained a judgment against a corporation for services rendered to it as an attorney at law to compel the corporation's stockholders and directors to pay the judgment debt, had discretionary power to permit the plaintiff to amend his bill so that he might rely on an additional

contention that the individual defendants had employed him to perform the services in question and that a contractual relation thereby was created; and an exception by two of the defendants to such allowance of such an amendment was overruled.

Upon a review of the evidence at the hearing of the suit above described, it was *held*, that there was no evidence warranting a finding that there was a contractual relation between the plaintiff and the defendants who excepted to the ruling allowing the amendment to the bill.

An attorney at law cannot maintain, by reason of a distribution by stockholders of a Massachusetts corporation among themselves of all the corporate assets, a suit in equity against them under G. L. c. 156, § 35, to compel payment of a judgment against the corporation which was based upon a claim for services contracted for and rendered by him after the alleged unlawful distribution.

Services rendered by an attorney at law to a corporation in seeking a reduction of a Federal tax assessed upon the corporation were not services of an operative within the provisions of G. L. c. 156, § 35.

If the board of directors of a Massachusetts corporation by vote takes action to carry out a distribution, authorized by vote of the stockholders, of what was called a final dividend in liquidation and comprised a balance on hand in the treasury, directors who were present at the meeting and so voted and also directors who, duly notified and fully informed of the proposed action, assented thereto although absent from the meeting, may be held liable in a suit in equity under G. L. c. 156, § 37, to pay a claim of a judgment creditor of the corporation, less in amount than the dividend so distributed, although the basis of the judgment was services, contracted for and rendered by an attorney at law after the vote of the directors, in gaining a reduction of a Federal tax assessed upon the corporation.

A judgment creditor of a Massachusetts corporation independently of the provisions of G. L. c. 156, '§ 37, may maintain a suit in equity to compel payment of his claim against the corporation and its directors upon proving that the directors made a final distribution, in a sum in excess of the plaintiff's claim, of all the corporate property, although the plaintiff's judgment was founded upon a claim for services contracted for and rendered to the corporation after the alleged unlawful distribution.

The plaintiff, by obtaining such judgment against the corporation, in the circumstances was *held* not to be precluded, on the ground of his having made an election, from maintaining the suit in equity for the enforcement of the judgment against the directors.

Although there is a presumption that the services of an officer of a corporation are rendered without compensation in the absence of a contract or definite understanding therefor, yet, if the services were accepted in such circumstances as to raise a presumption that the corporation expected or ought to have expected that they were to be paid for, a contract to pay for such services may be implied, and a formal vote of the corporation or of its directors is not necessary to raise such a presumption.  Per CROSBY, J.

In the suit above described there were five individual defendants who

were directors of the defendant corporation. One of the defendants in his answer included a cross bill, alleged to be brought by him as a minority stockholder and to set up a claim on behalf of the corporation to compel another of the defendants to repay to the corporation a sum alleged to have been illegally voted and paid to him as salary. It appeared that all the stockholders were parties to the suit. Upon a review of the evidence it was *held*, that

(1) Findings were warranted that, although the director who was a defendant in the cross bill had stated that he did not intend to ask for any salary for his services until the corporation was on a paying basis or until it was in a position where it could pay him for his services, such statement was not a promise, and that the company expected that the services would be paid for when warranted by its financial condition;

(2) A finding by the judge, that a vote directing the payment of the salary in question was made in good faith, could not be said to have been clearly wrong, and, on appeal, must stand;

(3) The plaintiff in the cross bill failed to sustain the burden of proof resting upon him to show that the salary voted was excessive, or misconduct on the part of the directors whereby the assets of the company had been appropriated wrongfully;

(4) By reason of acts and negotiations of the brother and codirector of the plaintiff in the cross bill with the other directors who voted the salary, all of which were communicated to the plaintiff in the cross bill who in the circumstances also might have been found to have held out his brother as authorized to act for him in the matter, and of such plaintiff's conduct with respect thereto, including the acceptance of money voted to him as a part of the same transaction, such plaintiff properly could be found to have ratified the vote of a salary which he was seeking to set aside and to be estopped in equity from questioning its validity;

(5) *Whether* such conduct would bar the claim made by the plaintiff in the cross bill on behalf of the corporation was not considered, it appearing plainly that there had been no such misconduct on the part of the defendants in the cross bill as was alleged;

(6) The plaintiff in the cross bill, in delaying for five years after the date of an agreement as to the salary and its payment to him and to his brother and for about three and one half years after the directors' vote carrying it out before starting proceedings to call in question the payment of the salary, could not be said to have acted with reasonable promptness; and, it further appearing that the defendant who received the salary in the meantime had acted to his prejudice in paying half of it to a trustee for the benefit of persons not parties to the suit, the plaintiff in the cross bill was guilty of laches.

Where minority stockholders seek to avoid the action of their officers or governing boards on the grounds of fraud or breach of trust, they must act with reasonable promptness after learning the facts.

BILL IN EQUITY, filed in the Superior Court on April 2, 1926, and afterwards amended, against The Wire Hardware

Company, and its directors and stockholders, described in the opinion.

On January 15, 1927, the defendants Shepard, who were brothers, filed the substituted answer and cross bill described in the opinion, which was further amended on September 22, 1927, by the addition of a paragraph reading as follows: "7. And further the said Stuart G. Shepard alleges that this suit in the nature of a cross bill is brought by him not for himself alone but in behalf of the corporation and all others similarly situated and interested."

The amendment to the bill, described in the opinion, was offered during the taking of testimony on the first day of the hearing, and was allowed subject to an exception by the defendants Shepard then noted.

The suit was heard in the Superior Court by *Bishop*, J. He found that for some time in 1921 the stock of The Wire Hardware Company had been held as follows: Charles G. Washburn, trustee, two hundred ninety-seven shares; Charles G. Washburn, one share; Reginald Washburn, one share; William L. Walker, one share; Stuart G. Shepard, one hundred shares; Perry M. Shepard, one hundred shares; total, five hundred shares. Other material facts found by him are stated in the opinion.

The judge also ruled "that Perry M. Shepard by agreeing in 1921 that Reginald Washburn should be paid $15,750 as salary or compensation for his services to The Wire Hardware Company between the years 1910 and 1920, and Stuart G. Shepard by reason of his course of conduct during the negotiations leading up to the agreement of April, 1921, his acceptance of $625 under the votes passed at the meeting of the directors on October 27, 1922, his silence and tacit assent since the agreement was made in April, 1921, and up to the summer of 1926 in reference to all things which it was proposed to do and which were done, have equitably estopped themselves from setting up any claim that such salary or compensation was illegally paid or that such salary or compensation should be refunded to the corporation, and that they are equitably estopped from maintaining their

cross bill against the respondents Charles G. Washburn, Reginald Washburn and William L. Walker."

By order of the judge, a final decree was entered dismissing the cross bill, directing that the Washburn interests pay the plaintiff $607.01, with interest, representing three fifths of the amount due him from the defendant corporation, and that the Shepards pay him $404.68, with interest, representing the remaining two fifths; and making a similar division of costs to be paid to the plaintiff in the main suit. The two Shepards appealed.

*C. B. Rugg*, for the defendants Shepard.

*G. K. Gardner*, (*L. Wheeler, Jr.*, with him,) for the defendants The Wire Hardware Company and others.

*G. Calkins*, pro se, submitted a brief.

CROSBY, J. This is a suit in equity brought by a creditor of The Wire Hardware Company, a Massachusetts corporation, to collect from the stockholders personally a judgment against the corporation. During the trial, the bill was amended so as to include allegations of employment of the plaintiff by the individual defendants, as well as by the corporation itself. The defendants Stuart G. Shepard and Perry M. Shepard filed a cross bill seeking relief as minority stockholders of The Wire Hardware Company against the company and the defendant Reginald Washburn. The case was tried before a judge of the Superior Court. A stenographer was appointed in accordance with Equity Rule 29 (1926). The trial judge filed a document entitled "Findings of fact," and ordered that a decree be entered directing payment by the individual defendants to the plaintiff of the amount claimed, and dismissing the cross bill. The defendants Stuart G. Shepard and Perry M. Shepard appealed from the final decree.

On November 26, 1924, the plaintiff, an attorney at law, was employed by the defendant Reginald Washburn, who was vice-president of The Wire Hardware Company, hereinafter referred to as the company, to appear as counsel to obtain a reduction in the amount of a proposed additional Federal income tax against the company in the amount of $6,806.21. As a result of the plaintiff's efforts, the proposed

assessment was reduced to $1,113.68; this assessment was assented to by the defendants. On November 13, 1925, and shortly after the reduction was secured, the plaintiff rendered a bill to the company, for services and expenses in securing the reduction, of $952.86, together with a charge of $30 for services in another matter. It is agreed that the plaintiff's charges were fair and reasonable, and that if he is entitled to recover he is entitled to receive the full amount. The trial judge having found for the plaintiff against all the defendants individually, and no appeal having been taken from the decree by the defendants Charles G. and Reginald Washburn and William L. Walker, the sole question under the original bill relates to the individual liability of the defendants Shepard.

The company was organized in 1910 and continued in business as a manufacturing corporation until 1914 when it was merged with the Cassady-Fairbank Company, another corporation. From 1914 to 1920 the company did no business except to care for the real estate formerly used and occupied by it; this property was sold in 1920, and notes secured by a mortgage were given in part payment of the purchase price and held by the company until 1923, when the last payment was made.

The stock of the company was held as follows: Perry M. and Stuart G. Shepard owned two fifths; the Washburn interests owned three fifths. The individual defendants were both stockholders and directors, and there were no stockholders other than the directors except that Charles G. Washburn held certain shares issued to him as trustee. Perry M. Shepard was president and treasurer; Reginald Washburn was vice-president, and clerk of the company from 1921.

On April 4, 1923, the annual meetings of the stockholders and directors were held. Both the Shepards knew in advance the nature of the business which would be considered at these meetings, but neither was present in person nor represented by proxy. At the stockholders' meeting it was voted to ratify and approve the sale of the business of the corporation and of the real estate and "to distribute as a

final dividend on liquidation to stockholders of record this day the balance on hand in the treasury of the company." At both the stockholders' and the directors' meetings it was voted "that the executive officers of the Corporation take whatever action they deem appropriate to secure dissolution of the Corporation." At that time it was understood by the stockholders and directors that there might be a Federal tax due from the company based upon an audit for the years before 1923. The amount of such tax was at that time unknown. To provide for the payment of such tax if found due, agreements were signed by which the Shepards were to pay two fifths and Charles G. and Reginald Washburn three fifths. On April 12, 1923, distribution of the assets was made pursuant to a vote of the stockholders. On November 26, 1924, the Federal government made an additional assessment of $6,806.21, on account of taxes due from the company for the year 1920. All the services charged by the plaintiff in the bill were performed after April 4, 1923, and the trial judge found that "on April 4, 1923, the petitioner's claim or debt against The Wire Hardware Company was not in existence."

On November 19, 1925, the plaintiff wrote to Stuart G. Shepard inclosing a memorandum of services rendered. Afterwards there was correspondence between these parties relating to the payment of the bill by the individual stockholders and directors. Shepard wrote the plaintiff that he in no way felt any legal or moral responsibility for the payment of the bill as a former stockholder or director since the plaintiff had charged the company on his books and had rendered the services to the company. On February 15, 1926, the plaintiff brought an action at law on his claims for services, in the Central District Court of Worcester, against the company upon which service was made, but the company neither appeared nor answered and was defaulted. On March 10, 1926, execution was issued for $1,002.77 damages and $8.92 costs. On March 17, 1926, the plaintiff made demand for payment of the execution. Payment was not made and, the company having no assets, the plaintiff brought this bill to enforce payment from the individual defendants as

stockholders and directors.   The plaintiff amended his bill
by adding an allegation that the defendants, individually,
employed him to perform these services and that a contrac-
tual relation thereby was created.   The defendants' excep-
tion to the allowance of the plaintiff's motion to amend the
bill must be overruled.   The allowance of the amendment
was a matter within the discretion of the court.   *Tufts* v.
*Waxman,* 181 Mass. 120, 121.   *Reno* v. *Cotter,* 239 Mass.
581, 583.

The defendants are not liable as stockholders under G. L.
c. 156, § 35.   On April 4, 1923, when the stockholders voted
to distribute all the assets, the plaintiff's claim or debt was
not in existence; the services rendered by the plaintiff were
not those of an operative and the judge correctly so ruled.
There was no evidence which warranted a finding that there
was a contractual relation between the plaintiff and the de-
fendants Shepard.

The defendants, however, are liable as directors under G. L.
c. 156, § 37.   That statute provides that "The directors of
every corporation shall be jointly and severally liable for the
debts and contracts of the corporation . . . .   For declaring
or assenting to a dividend if the corporation is, or thereby is
rendered, bankrupt or insolvent, to the extent of such divi-
dend."   On April 4, 1923, the stockholders voted to make
distribution of what they called a final dividend in liquidation
of the balance on hand in the treasury, and at the directors'
meeting immediately following that of the stockholders it was
voted that the officers should take whatever action they
deemed appropriate to secure dissolution of the company.
Both the defendants Shepard knew in advance of the pro-
posed action of the stockholders and directors at these meet-
ings.   Perry M. Shepard, as treasurer, drew the checks
effecting the distribution and they were accepted by him and
his brother with knowledge of all the facts.   It is plain that
these acts constituted an assent by the defendants to the dis-
tribution.   A distribution of the proceeds of the sale of all the
property of a corporation is a dividend within the meaning of
the statute.   *Pennsylvania Iron Works* v. *Mackenzie,* 190
Mass. 61, 63.   See *Spencer* v. *Lowe,* 198 Fed. Rep. 961.   The

statutory liability of directors is not limited to debts which were in existence at the time a dividend was declared. G. L. c. 156 in terms includes all debts and contracts. This is apparent from reading the first clause of § 37 in connection with clause two. By the latter clause the directors are made jointly and severally liable for debts and contracts, between the time of making or assenting to a loan to a stockholder and the time of its repayment, to the extent of such loan. By § 35 the statutory liability of stockholders is limited to debts and contracts existing at the time of the reduction of capital stock. If it were the intention of the Legislature to limit liability of directors to debts and contracts existing when a dividend is declared, it would have manifested such intention, as it did in those other sections. A statute imposing individual liability for corporate debts is to be construed strictly, and liability is not to be extended beyond the limits prescribed by those provisions of the statute. *Gray* v. *Coffin*, 9 Cush. 192, 199. *Auld* v. *Caunt*, 216 Mass. 381, 382.

The evidence warranted a finding that the individual defendants as directors were liable, independently of the statute, for the services rendered by the plaintiff. Although the directors of a corporation are not responsible for errors of judgment, they are fiduciaries charged with the duty of managing the affairs of the corporation honestly and with utmost good faith. If there is a violation of this duty resulting in the impairment of assets or loss to its property the directors can be compelled to make full restitution. *Elliott* v. *Baker*, 194 Mass. 518, 523. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159. *United Zinc Co.* v. *Harwood*, 216 Mass. 474. *Lazenby* v. *Henderson*, 241 Mass. 177. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 247. The directors of a corporation who distribute substantially all its assets to its stockholders are personally liable to refund the amount so distributed to the amount of unpaid debts, even though the corporation had no creditors at the date of distribution and debts were later incurred. *Williams* v. *Boice*, 11 Stew. (N. J.) 370. *Hurlbut* v. *Marshall*, 62 Wis. 590, 605. *Moxham* v. *Grant*, [1900] 1 Q. B. 88.

It is the contention of the defendants Shepard that the

plaintiff cannot recover against them as individual directors because he elected to maintain and pursue his remedy against the company and all his rights are merged in the judgment. "Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice." *Snow* v. *Alley,* 156 Mass. 193, 195. *Hewitt* v. *Hayes,* 205 Mass. 356, 364. *Cinamon* v. *St. Louis Rubber Co.* 229 Mass. 33, 37. *Loomis* v. *Pease,* 234 Mass. 101, 106. A judgment creditor with a return of "No funds" on an execution may, in equity, make liable to the payment of his claim money distributed as dividends without provision for the payment of creditors of the corporation. See *Gratz* v. *Redd,* 4 B. Mon. 178, 189. *Bartlett* v. *Drew,* 57 N. Y. 587, 590. The plaintiff, by obtaining judgment against the company, in the circumstances is not precluded from maintaining this suit in equity against the directors on the ground of election. The right which is sought to be enforced in the present suit is not inconsistent with the right of the plaintiff in the first instance to establish his debt by procuring a judgment against the company. The facts in the cases cited by the defendants are distinguishable from those in the case at bar. The decision in *Remington Paper Co.* v. *Hudson,* 64 Kans. 43, relied on by the defendants as establishing an election, was decided upon the peculiar provisions of two Kansas statutes. It was held that the plaintiff by not conforming to the relief granted by statute had made an election to hold the corporation and could not thereafter maintain an action against the stockholders.

It remains to consider the cross bill as amended, which is in the nature of a minority stockholders' bill seeking relief on the ground of fraud on the part of the directors in voting and paying to Reginald Washburn, a director and one of the defendants, the sum of $15,750 for services, contended to be excessive and illegal. It is the contention of the defendants Shepard that the money so paid should be repaid by Reginald Washburn to The Wire Hardware Company for distribution among the stockholders. The material facts relating to the cross bill are as follows: The company is the one by which the plaintiff was employed and against which he recovered

the judgment hereinbefore referred to. It was organized as a manufacturing corporation in 1910. The Shepards each owned twenty per cent of the stock; the remaining sixty per cent was owned by the Washburns or corporations which they controlled. Reginald Washburn was elected vice-president and agreed to give to the business such time and attention as his other business interests would permit. Perry M. Shepard was elected president, treasurer and general manager, and was employed at a yearly salary to take charge of the company's manufacturing plant. The directors of the company were the two Washburns, the two Shepards, and William L. Walker, who was selected and controlled by the Washburn interests. It was found by the trial judge, that "No stockholder or director has at any time objected to the passage of any vote or has requested to have his objection or dissent recorded"; and that "about the time the salary of Perry M. Shepard was being discussed Reginald Washburn stated to the Shepards that he did not intend to ask for any salary for his services until the company was on a paying basis or until it was in a position where it could pay him for his services. This was a statement of intention and not a promise, and neither of the . . . [Shepards] altered their position or did anything different from what they would have done if Mr. Washburn had not made this statement. The subject of compensation for the services of Reginald Washburn or his salary was not mentioned again until 1921."

Soon after incorporation, the company purchased a building in Chicago and pursued its manufacturing business there until 1914, when it ceased doing business, rented its property there, and purchased all the stock of the Cassady-Fairbank Company, a competing corporation. The officers of The Wire Hardware Company were elected to corresponding positions in the Cassady-Fairbank Company and the business was thereafter carried on by the latter company. Stuart G. Shepard and Perry M. Shepard each owned twenty-five shares of the Cassady-Fairbank Company stock. These shares were purchased from the two Shepards by The Wire Hardware Company for $625 per share. The shares of the other stockholders were purchased by the same company for

$650 per share. The trial judge found that "Although no vote was passed, it was understood that at sometime The Wire Hardware Company would pay the Shepards $1,250 more so that they should receive the same amount per share as had Cassady and Fairbank." The judge further found that Reginald Washburn from 1910 to 1914 rendered services of value to The Wire Hardware Company; that from 1914 to 1920 he and Perry M. Shepard worked together in renting and managing the Chicago property, which was sold in 1920 at a large profit; that both of them rendered services in effecting the sale; and that "The services rendered by Reginald Washburn in 1920 and 1921 in connection with the sale of this property were of value to the company to the extent of at least $5,000 as stated by Perry M. Shepard in a deposition given in connection with the Federal tax matter."

In the early part of 1921 after the sale of the property, Reginald Washburn spoke to Charles G. Washburn about payment for services he had rendered to the company during the preceding eleven years. No amount was mentioned and Charles G. Washburn replied that anything satisfactory to the Shepards would be satisfactory to him. Reginald Washburn then told Perry M. Shepard that as the company was about to liquidate he thought he should receive compensation for his services. Shepard suggested that he be paid $4,200, the amount of his own salary for one year. Washburn replied that that amount was insufficient, his services were as valuable as those of Shepard and he should receive an amount equal to the whole salary received by Shepard, which amounted to $15,750. Negotiations in reference to Washburn's claim for salary continued for several months and Perry M. Shepard kept his brother Stuart fully informed of his conversations with Washburn, and as to what was taking place. The trial judge found that at these conferences Washburn assumed that Perry M. Shepard represented his brother, as he had done theretofore, and that "Perry M. Shepard used language and expressions which would justify that belief." The feeling between Stuart G. Shepard and Reginald Washburn was extremely bitter, and for some time they had no relations with each other. The

judge found that Stuart G. Shepard "knew that Washburn believed that his brother was acting with his authority as his representative in this matter, and at no time did he tell his brother that he should notify Washburn that he was acting for himself alone, nor did he then or at any time prior to the commencement of this action deny that . . . [his brother] was his agent or representative. Knowing that Washburn was being misled, he purposely did nothing to undeceive him."

In April, 1921, Perry M. Shepard agreed with Reginald Washburn that the latter should be paid $15,750 for his services to the company; that each of the Shepards should receive $625 (the difference between the price for stock purchased from other stockholders of the Cassady-Fairbank Company and that paid to the Shepards); and that The Wire Hardware Company should pay the Wire Goods Company interest on the bills for goods furnished by the latter to the former company which had not been paid within the time allowed for credit. The judge found that the agreement for the payment of these various sums was part of one transaction and that there were not several separate and distinct agreements, as argued by the defendant Stuart G. Shepard. He knew of the agreement almost as soon as it was made. He expressed approval of the proposed payment of $625 to him and to his brother, but expressed indignation at Washburn's insistence on the payment of $15,750. It appears that no action was taken by the company toward the payment of the sums agreed upon until a meeting of the directors on October 27, 1922. The plans for this meeting had been previously discussed by Reginald Washburn and Perry M. Shepard, and the latter knew that it was proposed that the directors should vote to carry into effect the agreement made in April, 1921. Stuart G. Shepard was informed by his brother of the purpose of the meeting and copies of the proposed votes were sent in advance of the meeting to each of the Shepards. Before these copies were received, waivers of notice of the meeting were prepared by Stuart G. Shepard, were signed by him and his brother, and were forwarded. All the directors except the two Shepards were present at

the meeting, and it was unanimously voted to make the payments agreed upon between Shepard and Washburn in April, 1921. The judge found that the impelling motive prompting the directors to vote for the payment of a salary to Reginald Washburn was the fact that they individually and collectively believed that he had rendered valuable services to the company for which he had not been paid. On November 2, 1922, a check for $625 was delivered to each of the Shepards and one for $5,000 to Reginald Washburn, and were accepted by them respectively.

Subsequently the company's assets were converted into cash, and on March 30, 1923, Reginald Washburn wrote to Perry M. Shepard "that as an officer of the Wire Goods Company and of the Wire Hardware Company he was interested to reduce the loss of the former stockholders of the Wire Goods Company to the lowest possible point; that he would prefer to accept one-half only of the amount voted him with the understanding that the other half be paid to Charles G. Washburn, Trustee, for the benefit of the former stockholders of the Wire Goods Company." On the same day he wrote another letter to Perry M. Shepard enclosing a copy of the record of actions proposed to be taken at the annual stockholders' and directors' meetings to be held on April 4, 1923, and requested that the proxies of the Shepards be forwarded. Due notices of the meetings were given to the Shepards. Neither of them was present in person or represented by proxy, but both knew what actions were proposed to be taken. At the stockholders' meeting it was voted to ratify and approve the sale of the business and real estate of the corporation, to distribute the assets, and to dissolve the corporation. In accordance therewith, on April 12 and July 30, 1923, Perry M. Shepard, as president and treasurer of the company, drew checks distributing *pro rata* among the stockholders all the remaining assets of the company.

From October 27, 1922, to June 12, 1926, Stuart G. Shepard did not discuss with any one except his brother, the legality of the votes passed at the directors' meeting. On the latter date he took up the question with his attorney, and thereafter the Washburns first learned that he contended the

votes were illegal. At some time subsequent to June 12, 1926, demand was made by the Shepards that suit be brought by the corporation against Reginald Washburn to recover the sum of $15,750. The judge found that "Neither Stuart G. Shepard nor Perry M. Shepard had any adequate reason or excuse for their delay in making this demand or in bringing action for affirmative relief." Neither Shepard ever offered to return the sum of $625 which he received, but during the argument at the trial counsel offered on behalf of Stuart G. Shepard to refund into court $625 with interest from the date of payment. It is admitted that Perry M. Shepard agreed to the votes of October 27, 1922, and could not maintain the cross bill in his own name; and it was agreed that it might be dismissed as to him.

The findings of fact made by the trial judge are a part of the record and must stand unless plainly wrong. *Cohen* v. *Nagle,* 190 Mass. 4. It is settled that directors of a corporation act in a strictly fiduciary capacity, and they are held to exercise their authority with the utmost good faith. *Elliott* v. *Baker,* 194 Mass. 518, 523. *Putnam* v. *Handy,* 247 Mass. 406, 411. *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 96. *Manning* v. *Campbell,* 264 Mass. 386, 390. The equitable rights of stockholders are enforceable in equity. *Peabody* v. *Flint,* 6 Allen, 52, 56. Although there is a presumption that the services of an officer of a corporation are rendered without compensation in the absence of a contract or definite understanding therefor, *Sawyer* v. *Pawners' Bank,* 6 Allen, 207, 209; *Pew* v. *First National Bank of Gloucester,* 130 Mass. 391, 395; *Marcy* v. *Shelburne Falls & Colrain Street Railway,* 210 Mass. 197, 199; yet, if the services were accepted under such circumstances as to raise a presumption that the corporation expected or ought to have expected that they were to be paid for, a contract to pay for such services may be implied. *Bartlett* v. *Mystic River Corp.* 151 Mass. 433. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364. A formal vote of the corporation or of its directors is not necessary to raise a presumption that the corporation expected or ought to have expected that the services were to be paid for. *North Anson*

*Lumber Co.* v. *Smith*, 209 Mass. 333, 338. It has been held elsewhere that to entitle an officer to recover for services it must appear that a by-law or resolution was in force authorizing and fixing an allowance for such services before they were rendered. *Ellis* v. *Ward*, 137 Ill. 509, 518, 519. *Hall* v. *Woods*, 325 Ill. 114, 139. See *Dixmoor Golf Club, Inc.* v. *Evans*, 325 Ill. 612, 616.

The trial judge found that the statement of Reginald Washburn that he did not intend to ask for any salary for his services until the company was in a financial position to pay for them was not a promise. It could properly be presumed that the company expected the services would be paid for when warranted by its financial condition. It cannot be doubted that after the sale of the real estate in Chicago the financial condition of the company was such that payment for the services could justifiably be made. The reasonableness of the salary voted by the directors of a corporation to one of their members may be examined in a court of equity for the benefit of the corporation, and if the payment is excessive or illegal it may be recovered for the benefit of the corporation. *Stratis* v. *Andreson*, 254 Mass. 536, 539, 540. It is a question of fact whether the amounts withdrawn by the directors, under whatever name designated, were in excess of the fair value of their services rendered to the company. *Meyer* v. *Fort Hill Engraving Co.* 249 Mass. 302, 306. It was found by the trial judge that the directors voted for the payment to Washburn because they believed that from 1914 through 1920 he had rendered services of value to the company for which he had not been paid. It cannot be said that the finding that the vote was made in good faith was clearly wrong. In view of the many years in which the services were rendered, the valuable services rendered in 1920 and 1921 in connection with the sale of the Chicago property, and all the circumstances, there was no error in the refusal of the judge to find, in accordance with the seventeenth request for findings of fact, that $15,750 for such services was excessive. The minority stockholders have failed to sustain the burden of proof resting upon them to show misconduct of the di-

rectors whereby the assets of the company have been appropriated wrongfully. *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 516.

The findings by the judge were warranted that during all the negotiations Washburn believed that Perry M. Shepard was acting as agent for his brother Stuart; that Stuart knew Washburn believed Perry was acting for him and did nothing to dissuade such belief. It could be further found that the failure of Stuart to end the negotiations and inform Washburn that his brother did not represent him amounted to an implied authorization. *Lovell* v. *Williams*, 125 Mass. 439. "To lead a person reasonably to suppose that you assent to an oral arrangement is to assent to it, wholly irrespective of fraud." *O'Donnell* v. *Clinton*, 145 Mass. 461, 463. Besides, when Stuart learned of the terms of the agreement he did not notify Washburn that he repudiated it, did not forbid his brother to carry it through, and sent waivers to the directors' meeting. It could properly be found from these facts that he ratified the agreement. *Cushman* v. *Loker*, 2 Mass. 106. *Thayer* v. *White*, 12 Met. 343. *Foster* v. *Rockwell*, 104 Mass. 167. *Harrod* v. *McDaniels*, 126 Mass. 413. *Lajoie* v. *Milliken*, 242 Mass. 508, 526. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330, 331.

The finding, that the agreement to pay $15,750 to Reginald Washburn and $625 to each of the Shepards was all part of one transaction, was warranted by the evidence. The acceptance by Stuart G. Shepard of $625 under a vote which was the result of a conference between Perry M. Shepard and Washburn in April, 1921, and which conference was known to Stuart G. Shepard, constitutes a ratification. It is settled that one cannot accept the benefits of a transaction purporting to be done in his behalf and afterwards repudiate it. *Brigham* v. *Peters*, 1 Gray, 139, 147. *Sartwell* v. *Frost*, 122 Mass. 184, 188. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177. *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30. *Collins* v. *Splane*, 230 Mass. 281, 286, 287. *Gross* v. *Cohen*, 236 Mass. 468, 470. *Six Little Tailors, Inc.* v. *Old South Trust Co.* 260 Mass. 41, 44.

The finding that Stuart G. Shepard is equitably estopped

from asserting any illegality was justified by the evidence. Whether estoppel is established is a question of fact where it is possible to draw more than one inference from the evidence. *Taylor* v. *Jones*, 242 Mass. 210, 216. Where the conduct of a person has been such that another has been induced to change his position in good faith, and such that a reasonable man would rely upon it, an equitable estoppel may be held to exist. *Deans* v. *Eldredge*, 217 Mass. 583, 588, and cases cited. *E. V. Harman & Co.* v. *William Filene's Sons Co.* 232 Mass. 52, 55. *Rockport Granite Co.* v. *Plum Island Beach Co.* 248 Mass. 290, 295. Whether, however, such finding would bar the claim made in the cross bill on behalf of the corporation, (*Beaudette* v. *Graham, ante,* 7,) need not here be considered, as plainly no misconduct of the defendants in the cross bill was shown.

The evidence shows that Washburn has acted to his prejudice in relying upon Perry's apparent authority and the subsequent conduct of Stuart G. Shepard, who failed promptly to repudiate the transaction and apparently acquiesced in accepting the benefits accruing to him under the vote of the board of directors. Reginald Washburn turned over half of his salary to Charles G. Washburn, who took it in trust, in part, for persons not parties to this suit. No claim of any conspiracy was made, nor does the evidence support such claim. The trial judge found that "Neither Stuart G. Shepard nor Perry M. Shepard had any adequate reason or excuse for their delay in making this demand or in bringing action for affirmative relief." This finding was justified by the evidence. Mere delay, provided it does not extend beyond the period of the statute of limitations, does not of itself amount to laches. *Moore* v. *Dick*, 187 Mass. 207, 212. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36. Laches is not mere delay but delay that works disadvantage to another. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396, 401. *Cooke* v. *Barrett*, 155 Mass. 413, 414. *Mascari* v. *Mascari*, 255 Mass. 92, 98. Where minority stockholders seek to avoid the action of their officers or governing boards on the grounds of fraud or breach of trust, they must act with reasonable promptness after learning the facts. *Peabody* v. *Flint*, 6

Allen, 52, 57. *Royal Bank of Liverpool* v. *Grand Junction Railroad & Depot Co.* 125 Mass. 490. *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, 500. *Doane* v. *Preston,* 183 Mass. 569, 572. *Brown* v. *DeYoung,* 167 Ill. 549.

On the findings of the trial judge, including the finding that Stuart G. Shepard did not in any way inform Reginald Washburn of his claim that the votes were illegal until June, 1926, five years after the date of the agreement and about three and one half years after the directors' vote, it cannot be said that Shepard acted with reasonable promptness. These circumstances, together with the fact that Washburn has changed his position to his prejudice, establish that the defendants were guilty of laches in bringing their cross bill.

There was no error either in the findings made or those refused. In view of the facts found by the trial judge, he could not properly rule that the bill should be dismissed as against the defendants Stuart G. Shepard and Perry M. Shepard or that Stuart G. Shepard is entitled to a decree under the cross bill; nor was there any error in refusing to grant the requests for rulings which were denied. As we perceive no error in the conduct of the trial the entry must be

*Decree affirmed with costs.*