GEORGE F. NORTON & others *vs.* AUGUSTINE CHIODA & others.

Worcester.    September 25, 1944. — January 2, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Unfair Competition.    Unlawful Interference.    Evidence,* Matter of common knowledge.  *Laches.    Equity Jurisdiction,* Laches.

It is common knowledge that taxicabs are frequently hailed by prospective patrons in circumstances where only the front is visible.

The members of an association of independent owners and operators of taxicabs in a city, who had adopted and had used for seventeen years a certain color scheme and design which was essentially the same on all their cabs and which the public in that city had come to associate with them, were entitled to an injunction in a suit in equity against competing owners and operators of taxicabs in the same city who had adopted and been using for only a short time a color scheme and design on their cabs essentially the same as and intended by them to simulate the plaintiffs' and, especially in the nighttime and at any time to one looking at them from the front, likely to cause the public to believe that their cabs were those of the plaintiffs.

A suit in equity to enjoin unfair competition effected through use of a color scheme and design on the defendants' taxicabs, adopted by the defendants to simulate those on taxicabs of the plaintiffs, may be maintained without proof of actual deception of the public if a reasonable probability of such deception is established.

A finding, that laches barred maintenance of a suit in equity seeking relief on the ground of unfair competition in the use by one of the defendants of a color scheme and design on his taxicabs simulating those on taxicabs of the plaintiff, was warranted by proof that that defendant's alleged acts had continued for twelve years before the plaintiff sought relief; but a finding was not warranted that laches barred the plaintiff as against another defendant whose similar use of a color scheme and design had been for but one year and five months before the plaintiff sought relief and who was not shown to have been caused any disadvantage by such delay of the plaintiff in bringing suit.

BILL IN EQUITY, filed in the Superior Court on July 23, 1943.

The suit was heard by *Hammond,* J., on a master's report.

*H. T. George* & *J. J. George,* for the plaintiffs, submitted a brief.

*H. J. Dumas,* (*W. J. Moossa* with him,) for the defendants.

SPALDING, J.   This is a bill to restrain the defendants from using on their taxicabs a color scheme and design which the plaintiffs allege are similar to theirs. The master, to whom the case was referred, filed a report which was confirmed by an interlocutory decree from which no appeal was taken. The case comes here on the plaintiffs' appeal from a final decree dismissing the bill.

The master's findings may be summarized as follows: The fourteen plaintiffs are associated in the business of operating taxicabs in the city of Worcester under the name of Independent Taxi Operators Association (hereinafter called Independent). Although the membership has changed from time to time, Independent has been operating taxicabs in the city of Worcester continuously since 1926, the year it was formed. Independent's taxicabs (twenty-five in number) were owned and operated by the individual plaintiffs.

The defendants, except Lukum and Tragis, were members of an association similar to Independent, known as the Public Service Taxicab Company (hereinafter called Public), and were also engaged in operating taxicabs in Worcester. Public was formed in May or June, 1943. The defendants Lukum and Tragis, who are not members of either association, also own and operate taxicabs in Worcester. The plaintiffs and all of the defendants are competitors in the taxicab business in Worcester.

Since its formation Independent has adopted and used the following color scheme and design for its vehicles: The top, upper portion of the body, hood and mudguards are black. The lower portion of the body and the wheels are of a "medium dark red or maroon" shade that is essentially the same on all the cabs. A stripe four and one half inches wide, consisting of two white lines with a black line in between, separates the upper and lower parts of the body. The letters "I T O A," in gold, are printed on the rear doors. Most of the cabs carry a roof light over the top of the windshield with a shield and letters "I T O A" painted on the glass in front of the light. On the rear of the body of some of the cabs there is painted a shield containing the

letters "I T O A"; above the shield is the telephone number of Independent.

Public since its formation had adopted a color scheme which, except for slight differences, is essentially the same as that of Independent. The stripe, however, which separates the upper and lower portions of the body is of one color — a very light bluish gray. Most of the cabs carry a roof light over the windshield with the word "Taxi" on it. Across both doors on both sides of the cab, and on the rear, are the words "Public Service Cab" and the telephone number. The lettering and figures on the Public cabs are white.

The defendant Lukum has been operating taxicabs in Worcester since 1921. On about March 1, 1942, he changed the color scheme of his cab (which had been yellow) to one, except for minor differences, similar to that of the plaintiffs. This was the first time he had ever used such a color scheme. The cab has a roof light above the windshield on the front glass of which is printed "Desoto Sky View Cab." These words also appear on each of the rear doors; the same words with the exception of the word cab appear on the back of the cab. All of the lettering on the cab is silver.

The defendant Tragis has been in the taxicab business in Worcester since 1920. From 1931 down to the present time he has operated one or more cabs with a color scheme (except for a black and white checkered stripe) substantially the same as that of the plaintiffs. The words "Checker Cab" appear on the shield.

At present the only cabs in Worcester that are painted red and black are those of the plaintiffs and the defendants. Certain locations of the streets are designated as taxicab stands. The plaintiffs obtain about seventy-five per cent of their business from the stands or "off the street" and about twenty-five per cent is obtained through telephone calls. At the time of the hearing before the master the "dim out" regulations did not permit any lights on taxicabs to be lighted after dark other than "head" and "tail" lights unless such other lights were shielded.

The ultimate conclusions of the master based "upon all the evidence, the . . . findings of fact and reasonable inferences to be drawn therefrom" were that the plaintiffs, by the long continued use of the color scheme and design upon their taxicabs and by advertising have built a business reputation with the public of the city of Worcester, and have accustomed such public to associate the color scheme and design with their business; that the use of the color scheme and design on the cabs of each of the defendants (which was adopted for the purpose of simulating that of the plaintiffs), "especially in the nighttime and at any time when the public might observe such cabs from the front only," is likely to lead the public to believe that the defendants' cabs are those of the plaintiffs; that the inscriptions and designs on the sides and rear of the defendants' cabs are so prominent that, in daylight or in reasonable nighttime illumination, the ordinary person would observe the same if he were in a position to see such cabs from the side or rear; and that the difference between the plaintiffs' and the defendants' cabs with respect to small lights over doors, inside markings and upholstery and colors of stripes (except as to the "Checker Cabs") is as to details of minor significance which the general public would not be likely to note. There was no evidence that the plaintiffs sustained any monetary loss by reason of the defendants' conduct.

At the hearing in the Superior Court the judge, after confirming the master's report, found, as agreed by the parties, that the so called army "dim out" regulations referred to in the master's report had been abrogated in the areas where the defendants' taxicabs operate. He then reached the following conclusion: "With the 'dim out regulations' abrogated I find that with the roof lights properly lighted and with the conspicuous lettering on the sides and rear of the defendants' cars as same are now lettered it is highly improbable that any person seeking transportation by taxicab will be misled or deceived as to the ownership of any of the defendants' taxicabs," and ordered the bill dismissed as against all defendants.

We think that this was error. Since the conclusions of the master were based on the evidence (which is not reported) as well as the subsidiary facts, the trial judge and this court "are bound by the ultimate findings unless the subsidiary facts stated are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received." *Dodge* v. *Anna*ᶠ*Jaques Hospital*, 301 Mass. 431, 435. In our opinion, the specific findings of the master do not vitiate his ultimate findings and they must stand.

On these conclusions the plaintiffs were entitled to relief. It is true that the master found that there was no danger of confusion with respect to the plaintiffs' and the defendants' cabs if they were observed from the side or rear in daylight or "in reasonable nighttime illumination," and with the "dim out" abolished, we think it is permissible to assume that the "reasonable nighttime illumination" contemplated by the master thereafter obtained in Worcester. See *Payne* v. *R. H. White Co.* 314 Mass. 63. But the master also found that "*especially in the nighttime*[1] and *at any time* when the public might observe . . . [the defendants'] cabs from the front only" the public were likely to believe that they were those of the plaintiffs. It should be observed that this finding was not made to depend on the presence or absence of the "dim out" or on whether or not the roof lights of the cabs were illuminated. We think that this finding must be construed to mean that there might be deception of the public whenever the defendants' cabs were viewed from the front and that the likelihood of such deception was increased in the nighttime. This was sufficient, in our opinion, to entitle the plaintiffs to injunctive relief. It is common knowledge that taxicabs are frequently hailed by prospective patrons in circumstances where only the front of the cab is visible. It therefore cannot be said that the opportunities for confusion were negligible.

The plaintiffs' bill seeks relief on grounds of unfair competition. The governing principles of law are now well

---

[1] Italics ours.

established in this Commonwealth and there is no occasion to restate them. See *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149; *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90, 94, 95, and cases collected; *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172; *Cain's Lobster House, Inc.* v. *Cain,* 312 Mass. 512; *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503. While it is true, as stated by Holmes, J., in *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85, 87, "that a man cannot appropriate . . . a color." "Yet," as he added, "a color in connection with a sufficiently complex combination of other things may be recognized as saying so circumstantially that the defendant's goods are the plaintiff's as to pass the injunction line." See also *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154; Nims: Unfair Competition & Trade Marks (3d ed.) § 132. The combination of colors used on the plaintiffs' cabs was such, in the circumstances here obtaining, as to entitle the plaintiffs to relief against the defendants, who attempted to imitate it. This conclusion is supported by the principles of our decisions and by numerous decisions in other jurisdictions where on facts not unlike those in the case at bar it was held that the plaintiff was entitled to protection. See *Yellow Cab Co. Inc.* v. *Becker,* 145 Minn. 152; *Yellow Cab Co. of New Orleans, Inc.* v. *Jones,* 156 La. 838; *Yellow Cab Co.* v. *Creasman,* 185 N. C. 551; *Yellow Cab Co. of Atlantic City* v. *Simon,* 103 N. J. Eq. 392; *Seattle Taxicab Co.* v. *De Jarlais,* 135 Wash. 60; *Yellow Cab Co. of Rhode Island* v. *Anastasi,* 46 R. I. 49; *Luxor Cab Manuf. Corp.* v. *Leading Cab Co. Inc.* 125 Misc. (N. Y.) 764; *London General Omnibus Co. (Ltd.)* v. *Felton,* 12 T. L. R. 213. Proof of actual deception of the public is not required. It is enough if, as here, a reasonable probability of such deception exists. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172, 175. *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437, 440.

There remains for consideration the question whether the

plaintiffs are entitled to relief against the defendants Tragis and Lukum. The defendant Tragis pleaded laches, and the master concluded that, since he had been using the black and red color scheme of which the plaintiffs complain for a period of about twelve years prior to the filing of the bill, in so far as it was a question of fact the plaintiffs were guilty of laches. The trial judge reached the same conclusion. The question of laches is one of fact and we see no reason to disagree with this conclusion. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 436, 437. *Suburban Land Co. Inc.* v. *Billerica,* 314 Mass. 184, 191.

The defendant Lukum did not plead laches originally but was allowed to set it up in his answer at the time of the hearing on the master's report before the judge. The master found "that the period between March 1, 1942, when the defendant, Lukum, with the knowledge of the plaintiffs, caused his cab to be painted black and red, and the date of the filing of this bill on July 23, 1943, is nearly one year and five months," and left it to the judge to determine as matter of law whether this constituted laches. The judge ruled that it did. We think this was error. "Mere delay, provided it does not extend beyond the period of the statute of limitations, does not of itself amount to laches. . . . Laches is not mere delay but delay that works disadvantage to another." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, 291. *Ferrone* v. *Rossi,* 311 Mass. 591, 596. There are no findings that the delay in bringing suit caused any disadvantage to the defendant Lukum.

The final decree is reversed except as to the defendant Tragis, and a new decree is to be entered enjoining the defendants other than Tragis from conducting their taxicab business in Worcester in a manner likely to lead the public to believe that it is conducted by the plaintiffs, the details of the decree to be settled in the Superior Court. The bill is to be dismissed as against the defendant Tragis with costs to him against the plaintiffs. Costs are awarded to the plaintiffs as against all defendants except Tragis.

*So ordered.*