HERBERT C. MOSELEY, JUNIOR, executor, *vs.* BRIGGS REALTY COMPANY & others.

Suffolk.   May 8, 1946. — October 3, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Corporation,* Creditor, Retirement of stock, Dividend, Director's liability. *Equity Jurisdiction,* Director's liability, Laches, Fraudulent conveyance. *Limitations, Statute of.   Laches.   Fraudulent Conveyance. Interest.   Equity Pleading and Practice,* Interest.   *Words,* "Creditor," "Dividend," "Conveyance."

A final decree in equity ordering the defendant to pay a sum of money to the plaintiff need not provide for interest thereon after the entry of the decree.

A provision of the agreement of association of a business corporation, that certain of its property should not be alienated unless replaced by other like property of equivalent value "or the proceeds applied to the retirement of the preferred stock," did not mean that the preferred stockholders should be entitled to receive the proceeds of a sale of such property when their receiving the proceeds would result in creditors remaining unpaid.

A real estate broker who had earned a commission by acting for a corporation in the sale of property, or the legal representative of the broker after his death, was a "creditor" of the corporation within G. L. (Ter. Ed.) c. 156, § 38, even before the obtaining of a judgment for the commission against the corporation.

A final decree in favor of a single plaintiff in a suit brought under G. L. (Ter. Ed.) c. 156, § 38, in behalf of himself and such other creditors as might join was proper where no other creditor did join.

A liquidating dividend to stockholders of a corporation is a "dividend" within G. L. (Ter. Ed.) c. 156, § 37.

A cause of suit under G. L. (Ter. Ed.) c. 156, §§ 37, 38, by a creditor against a director of a corporation, insolvent or rendered insolvent by the payment of a dividend, accrued, although the corporation had not been adjudicated a bankrupt, upon the expiration of ten days after a demand by the creditor upon it for the payment of his claim, not at the time of the payment of the dividend.

The commencement of an action at law by a creditor of a corporation against it upon his claim was a demand upon it therefor within G. L. (Ter. Ed.) c. 156, § 38, and the six year period of limitation for a suit in equity against directors of the corporation under the statute commenced to run at the expiration of ten days following such demand.

A suit in equity under G. L. (Ter. Ed.) c. 156, §§ 37, 38, against directors of a corporation which paid dividends on successive occasions while insolvent, although barred by the statute of limitations as to certain of the dividends, might be maintained as to later dividends respecting which it was seasonably brought, and the recovery was limited to the amount of the later dividends.

A finding of absence of laches in a suit in equity under G. L. (Ter. Ed.) c. 156, §§ 37, 38, against directors of a corporation which paid dividends while insolvent was not error where it appeared that the plaintiff had no knowledge of any facts leading him to believe there was wrongdoing until about three months before the commencement of the suit, and that no substantial harm to the defendants had resulted from delay in its commencement.

A liquidating dividend paid by an insolvent corporation to a stockholder was a fraudulent conveyance within G. L. (Ter. Ed.) c. 109A, although there was no actual intent to defraud the creditors of the corporation in paying it.

A cause of suit by a creditor of a corporation to set aside, as a fraudulent conveyance, the payment of a dividend made while the corporation was insolvent arose upon the payment, and such a suit, brought by the creditor more than six years after the payment, was barred by the statute of limitations even though the plaintiff did not discover the facts as to the payment until shortly before bringing it.

BILL IN EQUITY, filed in the Superior Court on February 27, 1945.

The suit was heard by *Sullivan,* J.

*A. P. Stone,* for the defendants Daggett and another.

*J. N. Esdaile,* for the plaintiff.

LUMMUS, J. This case is here upon appeal by the defendants Fred L. Daggett and Frank Wrye from a final decree adjudging them "indebted to the plaintiff for the sum of" $11,544.21, with costs. We do not pause to discuss the irregular form of the decree. *Malloy* v. *Carroll,* 287 Mass. 376, 390, 391. The decree unnecessarily provided for interest after its entry. *Boyer* v. *Bowles,* 316 Mass. 90, 95.

From the reported evidence and the findings the following facts appear. The defendant corporation, a Massachusetts business corporation organized in 1920 under what is

now G. L. (Ter. Ed.) c. 156, owned a factory building in Cambridge. The corporation employed the plaintiff's testator, Herbert C. Moseley, a real estate broker, to effect a sale of the factory building. After he had earned a commission by doing so in December, 1936, he died on October 13, 1937. One Sherman and the plaintiff Herbert C. Moseley, Junior, became executors of his will, and the latter still survives. The executors brought an action on May 12, 1938, and obtained a judgment for the commission against the corporation (*Sherman* v. *Briggs Realty Co.* 310 Mass. 408), and on that judgment obtained on January 20, 1942, an execution, still wholly unsatisfied, for $9,333.69, upon which a demand was made on the corporation on April 22, 1942, without result.

In the years 1937, 1938 and 1939 the corporation received from the sale of its factory building not only the assumption of a mortgage for $100,000 but also $50,000 in cash. That sum was sufficient to pay all the corporate debts, including the debt to the plaintiff. Fred L. Daggett and Frank Wrye were two of the three directors from March 15, 1937, to the present time. From March 15, 1937, until March 31, 1938, the third director was George A. Fernald, but from the latter date until the present time the third director has been Mildred Daggett. More than $21,000 of the $50,000 received by the corporation in cash was used to pay debts. But $28,845 thereof was paid to the preferred stockholders in liquidating dividends: $24,745 in 1937, $3,815 in 1938 (the last payment in that year being one of $1,050 made on July 5), $215 in 1939, $28 in 1940, and $42 in 1941. The judge found that the corporation became insolvent on December 31, 1937.

The defendants rely upon a provision in the agreement of association of the company, that "No real estate or machinery of the company shall be sold or otherwise disposed of unless replaced with other real estate or machinery of at least equal value in the opinion of a majority of the directors *or the proceeds applied to the retirement of the preferred stock*" (emphasis supplied). On each certificate of preferred stock the following appeared: "The preferred

stock and common stock shall be subject to such prefer-
ences, restrictions and limitations as are stated in the
agreement of association."

We need not decide in this case that in the absence of
statutory authority an agreement of association can never
give preferred stockholders rights superior to those of
creditors. See *Hurley* v. *Boston Railroad Holding Co.* 315
Mass. 591, 610, 618; *Scovill* v. *Thayer*, 105 U. S. 143, 154;
*Warren* v. *King*, 108 U. S. 389, 396, 397; Ballantine, Cor-
porations (1927) § 142; Fletcher, Cyclopedia of the Law of
Private Corporations (1942) § 7944. The statute, now
G. L. (Ter. Ed.) c. 156, § 14, merely authorizes "two or
more classes of stock with such preferences, voting powers,
restrictions and qualifications thereof as shall be fixed in
said agreement . . . ." That provision permits priorities
between common and preferred stockholders. *Crimmins &
Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass.
367, 374. *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424.
Even if priority can be given to preferred stockholders
over creditors, contracts for priority to preferred stock-
holders "are subject to the implied limitation that they
cannot be enforced if the effect is to render the corporation
insolvent . . . ." *Crimmins & Peirce Co.* v. *Kidder Pea-
body Acceptance Corp.* 282 Mass. 367, 376. In the present
case the agreement of association, as we construe it, does
not even purport to give to preferred stockholders any
right to receive the proceeds of a sale of real estate when
such receipt would require creditors to remain unpaid.

Under G. L. (Ter. Ed.) c. 156, § 37, directors are made
jointly and severally liable for the debts and contracts of
the corporation "for declaring or assenting to a dividend if
the corporation is, or thereby is rendered, bankrupt or
insolvent, to the extent of such dividend." In the present
case the amount of the liquidating dividends to preferred
stockholders exceeded the amount of the debt of the cor-
poration to the plaintiff, so that the liability is limited to
the latter amount. Even where the corporation has not
been adjudicated bankrupt, the liability of directors under
§ 37 may be enforced, provided "before a suit to enforce

such liability is brought by a creditor of said corporation, a written demand by or on behalf of the creditor upon such corporation for the payment of his. claim has been made, and said corporation has for ten days thereafter neglected to pay it." § 38. We have no doubt that Moseley, or after him his estate, was a "creditor" even before judgment was obtained. *Union Market National Bank* v. *Gardiner,* 276 Mass. 490, 494. The bill in the present case was properly brought in behalf of the plaintiff and of such other creditors of the corporation, entitled to enforce their claims against the same defendants, as might join in the bill as plaintiffs. § 38. Since no other creditor joined, a decree in favor of the plaintiff alone was proper. A liquidating dividend, or distribution of capital assets among stockholders, is a "dividend" under the statutes cited. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 59.

The defendants in their answer set up that all the acts set forth in the bill "and all liability arising therefrom arose more than six years before the date of the plaintiff's writ [bill?] in this case and are barred by the statute of limitations." In argument they suggest that the plaintiff cannot complain as to dividends paid more than six years before the bill was filed on February 27, 1945. That suggestion seems to miss the point. The present suit falls within the class of equitable "actions of tort" (G. L. [Ter. Ed.] c. 260, § 2, Second; *Union Market National Bank* v. *Gardiner,* 276 Mass. 490, 493; *Ballentine* v. *Eaton,* 297 Mass. 389, 394; *Director of Liquidations* v. *Exchange Trust Co.* 313 Mass. 351) which may be "commenced only within six years next after the cause of action accrues," and the cause of action accrued in this case only at the expiration of ten days after demand under G. L. (Ter. Ed.) c. 156, § 38. *Union Market National Bank* v. *Gardiner,* 276 Mass. 490, 495. *Continental Corp.* v. *Gowdy,* 283 Mass. 204, 212, 213. In this case there was a demand on April 22, 1942, well within six years prior to the filing of the bill on February 27, 1945. But there had been an earlier demand on May 17, 1938, when the writ in the action against the corporation to recover the commission had been served upon the

corporation. [1] *Standard Oil Co. of New York* v. *Y-D Supplies Co.* 288 Mass. 453. Ten days later a cause of a suit like the present accrued, for the liquidating dividends had resulted in insolvency on December 31, 1937. So far as the present suit is based on the cause that accrued on May 27, 1938, it is barred by the statute of limitations.

But there were payments of liquidating dividends after the cause of suit accrued on May 27, 1938, and those dividends to the extent of their amount rendered the corporation further insolvent, for they deprived creditors of that amount. Because of those later dividends, which could not form part of the cause of action under G. L. (Ter. Ed.) c. 156, §§ 37, 38, which accrued on May 27, 1938, a new cause of suit arose upon the expiration of ten days from the demand made on April 22, 1942. Upon that new cause of suit recovery must be limited to the amount of those later dividends, which consisted of $1,050 paid on July 5, 1938, $215 paid in 1939, $28 in 1940 and $42 in 1941, a total of $1,335. The record does not show that these later dividends were formally declared before they were paid. Apparently they were paid under a blanket authority given by the directors to the "president or treasurer," authorizing "either of them to continue making liquidating dividends to the preferred stockholders not exceeding $38.50 per share," which was given by votes of the directors on March 31, 1938, and again on March 6, 1939.

The defendants in their answer set up laches. "Laches is not mere delay but delay that works disadvantage to another." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69, quoted in *Carter* v. *Sullivan,* 281 Mass. 217, 227, and in *Norton* v. *Chioda,* 317 Mass. 446, 452. See also *Goldstein* v. *Beal,* 317 Mass. 750, 759. The defence of laches usually raises a question of fact, on which the defendants have the burden of proof. *Shea* v. *Shea,* 296 Mass. 143, 147. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 300. *Norton* v. *Chioda,* 317 Mass. 446, 452. *Goldstein* v.

---

[1] The record on the files of this court in *Sherman* v. *Briggs Realty Co.* 310 Mass. 408, may be consulted. *Matter of Welansky,* 319 Mass. 205, 210, and cases cited.

*Beal,* 317 Mass. 750, 759. The plaintiff did not know of any wrongdoing until November 30, 1944. The defendants urge that a diligent study of the corporate returns would have given the plaintiff a hint of what was being done with the corporate assets. But the record does not show that the plaintiff actually knew any facts that would lead him to think that the principle that creditors take priority over stockholders in the distribution of assets was being violated. "So long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can be no laches." *Stewart* v. *Finkelstone,* 206 Mass. 28, 36. *J. C. Penney Co.* v. *Schulte Real Estate Co. Inc.* 292 Mass. 42, 46. The delay in the present case does not appear to have caused the defendants substantial harm. *Jubinville* v. *Jubinville,* 313 Mass. 103, 105. We think that the judge was right in not denying relief on the ground of laches.

It follows that the final decree should have required the defendant Wrye to pay to the plaintiff $1,335, with interest from the filing of the bill, and no more.

But though the plaintiff could not recover more than the same sum, $1,335, from Fred L. Daggett on the theory of liability already discussed, the question remains whether he may do so on another theory. The judge found that at a time when the corporation was insolvent Daggett received without consideration $14,810, a larger sum than the amount of the plaintiff's judgment and execution, as liquidating dividends upon preferred stock held by him, in fraud of the creditors of the corporation, of whom the plaintiff was one. The final decree requiring Daggett to pay to the plaintiff $11,544.21, the amount of the plaintiff's claim at the time of the entry of that decree on December 31, 1945, was based upon the theory of fraud on creditors as well as on the theory of the statutory liability of a director. But the greater part of the liquidating dividends were paid before the corporation became insolvent, and Daggett received only $1,855 after the corporation became insolvent. There was no "fair consideration" for that liquidating dividend to Daggett of $1,855, within the meaning of

G. L. (Ter. Ed.) c. 109A, § 3. That dividend constituted a "conveyance" (§ 1), by an insolvent (§§ 2, 4), even though there was no actual intent to defraud within § 7. *Powers* v. *Heggie*, 268 Mass. 233, 242.

Under G. L. (Ter. Ed.) c. 109A, § 9, the plaintiff had the right to "have the conveyance set aside . . . to the extent necessary to satisfy his claim," (which in this case means to have the whole conveyance of $1,855 set aside,) and could enforce that right in equity. G. L. (Ter. Ed.) c. 214, § 3 (9); c. 109A, § 11. In this Commonwealth it is not necessary that the plaintiff in such a case obtain judgment before resorting to equity, as it was under general equity practice applicable to a general creditor's bill. *Buckley* v. *John*, 314 Mass. 719, 727. *Blumenthal* v. *Blumenthal*, 303 Mass. 275. *Powers* v. *Heggie*, 268 Mass. 233. 52 Harv. L. Rev. 840. 30 Columbia L. Rev. 202. The plaintiff's cause of suit accrued and was mature as soon as the liquidating dividend of $1,855 was paid to Daggett on April 27, 1938. Our statute of limitations speaks in terms appropriate to actions at law. The proper analogue in this case is an action of contract or of tort, which must be commenced "within six years next after the cause of action accrues." G. L. (Ter. Ed.) c. 260, § 2. The bill was not filed until more than six years after April 27, 1938, and so far as it rests upon the theory of fraudulent conveyance it is barred by the statute of limitations. The fact that the plaintiff did not discover the facts as to the liquidating dividends until shortly before the bill was filed does not help him. *Norwood Trust Co.* v. *Twenty-Four Federal Street Corp.* 295 Mass. 234, 237.

It follows that in this case the recovery against Daggett as well as against Wrye must be limited to $1,335. The final decree should have required them both jointly to pay to the plaintiff only $1,335, with interest from the filing of the bill on February 27, 1945, and costs. *Brennan* v. *Bonnoyer*, 319 Mass. 307, 309. The final decree is to be modified in accordance with this opinion, and as so modified is affirmed with costs to the plaintiff.

*So ordered.*