BERTHA MILES, as Administratrix, etc., of FLOYD R. MILES, Deceased, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Third Department, January 5, 1921.

**Railroads — personal injuries — when release by injured person valid although resulting complications cause death for which company would otherwise be liable — mutual mistake of fact.**

A release given by a mail clerk at the instance of a claim agent of a railroad company for an injury sustained the day before in a collision whereby he was thrown to the floor of the mail car and injured, is valid, even though the railroad company's negligence be conceded, and will defeat an action brought by the administratrix to recover damages for his death which resulted several months after the release was given, where no

fraud was practiced at the time the release was procured, nor any advantage taken of the injured person, the release being based on the conditions which each party thereto thought at the time to exist and not on a mutual mistake of fact.

WOODWARD, J., dissents.

APPEAL by the plaintiff, Bertha Miles, from an order of the Supreme Court, made at the Madison Trial Term and entered in the office of the clerk of the county of Madison on the 10th day of December, 1919, granting defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Charles A. Hitchcock,* for the appellant.

*Warnick J. Kernan,* for the respondent.

Order affirmed, with costs, on the opinion of KILEY, J., at Trial Term.

All concur, except WOODWARD, J., dissenting; KILEY, J., not sitting.

The following is the opinion delivered at Trial Term:

KILEY, J.:

At a term of this court commencing May 5, 1919, the above action was tried, resulting in a verdict in favor of the plaintiff. Plaintiff's intestate, her husband, for several years prior to December 13, 1915, was a mail clerk, working as such on defendant's train, over its road between Syracuse and New York. On the 13th day of December, 1915, the train upon which he was working collided with another train at Utica, N. Y. Plaintiff's intestate was thrown to the floor of the car and was injured. He continued as far as Albany and returned home. A physician was called the day he returned. The injuries suffered by reason of the collision and fall upon the floor of the car were the result of defendant's negligence, so conceded upon the trial.

On the 14th day of December, 1915, one E. S. Bavis, claim agent of defendant, called upon Mr. Miles at his home in the village of Canastota, N. Y., and paid him $250, for which Mr. Miles executed, acknowledged and delivered to defendant a release, in part as follows:

" *Witnesseth*. That said Railroad Company hereby agrees that it will pay to said claimant the sum of two hundred fifty and no /100 dollars, as the sole consideration and without any other promise or agreement, the said claimant hereby agrees that he will accept and receive the said sum from said Railroad Company in full payment, satisfaction and discharge of all claims, demands and causes of action against said Railroad Company, and especially from all claims and demands arising from injuries received by said claimant at or near Utica, State of New York, on or about the 13th day of December, 1915."

Mr. Miles died May 31, 1916. Subsequently plaintiff, as administratrix of her husband's estate, brought this action, alleging that from the injuries received at the time of the collision there developed spinal meningitis, which resulted in the death of her husband. Plaintiff set out in her complaint the release given by her husband to defendant and sought to avoid it on the ground that the parties were laboring under a mutual mistake as to the extent of the injuries involved. No claim was made in the complaint or upon the trial that any fraud was practiced upon or toward the plaintiff's intestate; no claim that any advantage was taken of Mr. Miles; no claim that he was incompetent.

Upon this motion defendant argued that under the circumstances surrounding the execution and delivery of the release it should stand. Also that the verdict is against the weight of evidence as to the cause of death. The verdict of the jury should not be disturbed on the last proposition.

The validity of the release presents a different and more difficult question. The plaintiff urges that the only question to be decided upon this motion is whether or not the release was based upon a mutual mistake of fact. In view of the important principle involved here, it is necessary to consider what constitutes a "mutual mistake of fact" so far as the circumstances, disclosed by the evidence, are applicable to the expression and what it is intended to represent. It can mean but one thing in this case, viz., that plaintiff's intestate did not anticipate that the injuries he received would cause the development of spinal meningitis and that his death would follow as a result. That defendant, through its claim agent,

did not anticipate that such injuries would produce spinal meningitis and cause the death of Mr. Miles. It would seem that this is the broadest scope that can be given to the expression " mutual mistake of fact " when viewed in the light of the evidence in this case. I think it may be fairly held that neither party to the release anticipated or considered the fatal termination which followed the injury, and the settlement made as shown by the release.

Is this sufficient ground to set aside the release? If that was the only element to be considered it would be a trouble-some proposition in view of some of the decisions that have been made. However, in this case the facts and circum-stances, as shown by the record, must be taken into con-sideration. It appears that the defendant, through its claim agent, did not have any knowledge except what he obtained from Mr. Miles and what he could see of him on the morning he was there for the release. The only facts existing at that time the plaintiff's intestate knew, and told them to defend-ant's agent, viz., that he was thrown to the floor of the car and was bruised and shocked, no bones broken, no lacerations of flesh or muscle; what subsequently developed was not in existence at that time and not for some weeks or months later; and what did subsequently develop was not the natural or usual result of such an injury. Thus we are brought to the question, what was considered by either or both of the parties to the release? Mr. Bavis says he was there to get a release that would foreclose any further claim against defend-ant on the part of Mr. Miles. He admits that he might have said he thought that Mr. Miles would be out in a few days; but that must have been based upon the extent of injuries then known and disclosed to him by the injured person; that was a mere expression of opinion and does not sustain the claim that there was a mutual mistake of fact on his part. *Houghton* v. *Houghton* (34 Hun, 212), cited by plaintiff, has many features not found in this case; no consideration. The grantor " was induced and persuaded," and the subsequent acts of grantee colored the reasoning of the eminent jurist who wrote the decision; this appears from the following found in the opinion: " It is also inferable, from the allegations of the complaint, that the plaintiff did not intend to make

his deed irrevocable except in case of his death, and that would furnish a basis for the action    *    *    *." In *Kirchner v. New Home Sewing Machine Co.* (135 N. Y. 182), also cited by plaintiff, the question of actual concealment, on the part of a releasee, of conditions of which the releasor did not have knowledge, and further that the restrictions in the release were not destroyed by the general clause contained at the foot of the release. In other words, it was held that there was a cause of action not intended to be included. The same authority lays down this general rule: " It is competent for a party by his own act to forego recovery for unknown as well as known causes of action."

Distinct from what the evidence in that case led the court to conclude, the justice makes this observation at page 189 of the opinion: " If the plaintiff can show that by a mutual mistake of the parties, or by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover." This is a general rule laid down which may have to give way or submit to modification, according to the facts of the case being considered. In the case at bar the element of fraud or misrepresentation is absent. The defendant knew the facts only as stated by the releasor and he stated them as they were at that time. What was the position of plaintiff's intestate as disclosed by the evidence? His physician had seen him before the call of the claim agent of defendant. He knew he was bruised and had suffered a severe shaking up; no other conditions were present at that time. The vital question for plaintiff comes in here; did the intestate consider the possibility of something developing in the future from this injury which he did not and could not know at that time? Did he speculate on the chance that some unforeseen result might follow? According to what took place at the time of the execution of the release, as detailed by plaintiff who was present, he bargained for a higher sum than was first offered, and after the sum finally accepted by him was reached, he still hesitated and appealed to his wife, this

plaintiff, as to whether he had better take the chance. Her advice, twice given, was to wait until time would disclose further impairment, symptoms, results of development, and notwithstanding this advice he concluded to and did take the chance.

It would seem that the opinion in *Chicago & N. W. Ry. Co.* v. *Wilcox* (116 Fed. Rep. 913) more nearly covers the circumstances in this case than any other case cited or examined.

The plaintiff in that action was a woman upwards of sixty years of age; she was injured on defendant's road and through the negligence of defendant; the injury was the breaking of her hip; her physician and the railroad physician were the same person. She claimed she was advised by the physician that she would be out or well in a year. She accepted $600 in settlement and executed a release, upon what constituted or did not constitute " a mutual mistake." The court wrote in part as follows:

" A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and every one who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties.   *  *  *   Conceding, for the moment, that the doctor and the agent told the complainant that there was no doubt that she would be well in a year; that she believed this statement; that she relied upon it, and that she has never recovered — still these facts do not establish a mistake of fact which will

warrant the avoidance of a solemn agreement of settlement. The mistake which they established was a mistake in prophecy, in opinion regarding the happening of a future event on the part of the doctor and of the agent, and a mistake in belief as to what the future had in store for her on the part of the complainant. The future duration of the disability, the future effects of the injury, were not matters of fact, but matters of conjecture, of opinion, of belief. The only material facts which conditioned the contract of compromise were the injury which the complainant had received and the acts of the railway company which caused it. These the complainant knew as well on the day she signed the release as she has ever known them. The future duration and the ultimate effects of the injury were unknown and unknowable future events, a mistake concerning which was a mere mistake of opinion or of belief, and not a mistake of fact. * * * The physical and mental condition of the sufferer, the state of his vital organs, his age, his habits of life, the character and temperament of his nervous system, and many other conditions that it is impossible to enumerate or even conceive, inevitably affect the duration and the character of his disability and the amount of his suffering."

In *Lumley* v. *Wabash Railroad Company* (76 Fed. Rep. 66, 71) the following statement appears in the opinion of the court: "If one agrees that he will receive a given amount in satisfaction and settlement of his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and of itself, be ground for setting aside the settlement or limiting the release."

Again, in *Great Northern Railway Company* v. *Fowler* (136 Fed. Rep. 121) the court discusses the subject of "mutual mistake" as follows: "The appellant's surgeon made an apparent cursory examination of the appellee's injuries, and found that they consisted of a wound of the scalp, a contusion of the shoulder, and nothing more, and expressed his opinion that the appellee would be ready to go to work again in two weeks. The appellee consulted no other physician as

to the extent or probable duration of his injury.  He was a sick man at the time when he made the settlement.  He accepted the statement and opinion of the appellant's surgeon, and, on the basis of it, received $195, and signed the discharge.  We entertain no doubt that such a release, executed under a mutual mistake of facts so induced by the appellant, should be set aside.  It is true that where there is no misrepresentation or fraud on the part of the releasee, a releasor cannot subsequently avoid his release on the ground that his injuries were more serious than he thought them to be, even though his opinion at the time of making the settlement may have been based upon that of a physician employed by the releasee to examine and report on the extent of his injuries.  Such was the case of *Nelson* v. *Minneapolis Street Ry. Co.,* 61 Minn. 168; 63 N. W. Rep. 486."

In the present case the defendant was negligent, its negligence caused the injuries for which plaintiff brings this action, and if she is correct as to the cause of her husband's death, that negligence subjected and subjects plaintiff and her family to hardship and deprivation.  The decision reached is reluctantly reached, and because there seems no legal escape from it.  The decision of the jury if upheld would make, not only contracts of this kind insecure, but the same principle would apply to all contracts when the party losing by such contract could avoid the same by claiming there was a mutual mistake on the part of each party to the contract, or a mistake on his part and fraud on the part of the other party.  As to some contracts the remedy and relief are proper; but should not be extended to contracts executed under the circumstances surrounding the execution of this contract.  It will be noted that there was no fraud alleged or proved, no misrepresentation either active or passive, all parties were competent.  The injuries and the extent thereof, so far as known, were discussed and considered, and after such discussion and consideration, $250 was paid for the release by the defendant.  Such a contract should not be set aside.

Motion is granted, the verdict is set aside and new trial granted, with costs to abide the event.