The Continental Corporation *vs.* Robert Gowdy & others.

Hampden. May 12, 1932. — May 31, 1933.

Present: Rugg, C.J., Wait, Field, & Donahue, JJ.

*Bond*, Of corporation: clause respecting "no recourse" to stockholders, officers or directors. *Contract*, Construction, Validity. *Statute*, Construction. *Corporation*, Officers and agents.

Each of a series of bearer bonds issued by a corporation and secured by a mortgage contained a clause providing: "These bonds are issued without recourse against the stockholders, officers, or directors, under

or by reason of any covenants or agreements, express or implied, in this bond or in the coupons hereof, or in said . . . mortgage." The corporation subsequently was adjudicated a bankrupt. Thereafter a suit in equity was commenced by one of the bondholders to enforce the personal liability of the directors of the corporation under G. L. c. 156, § 36, arising from the improper issuance of its stock and falsity in statements or reports required by said chapter, which occurred for the most part after the issuance of the bonds. No other cause of action was alleged and no other relief was sought. *Held*, that

(1) The clause above quoted, if applicable to the statutory liability sought to be enforced, was available to the directors as a defence to the suit even though the directors were not parties to the contract between the corporation and the plaintiff;

(2) The words "without recourse" in said clause were not used in a technical sense and did not confine the application of the clause to liabilities resulting from transfers of the bonds subsequent to their issuance: the clause was a part of the contract between the corporation and any bearer of the bonds;

(3) Said clause was applicable to the statutory liability sought to be enforced: such statutory liability was a secondary liability for the obligation of the corporation on the bonds and arose "under or by reason of . . . covenants or agreements, express or implied" in the bonds;

(4) Said clause was applicable to such statutory liability of the directors arising from their acts both before and after the issuance of the bonds;

(5) So construed, said clause was not invalid for the reason that it would bar the bondholders from enforcing a liability of the directors which had not yet arisen at the time of the issuance of the bonds;

(6) Such statutory liability being imposed for the benefit of the corporation's creditors and not for the protection of the general public, said clause, so construed as applicable to such liability arising from acts of the directors both before and after the issuance of the bonds, was not invalid in that it was contrary to public policy;

(7) Said clause barred the suit.

BILL IN EQUITY, filed in the Superior Court on November 6, 1931, and afterwards amended, described in the opinion.

Certain defendants demurred. The demurrers were heard by *Lummus*, J. By his order an interlocutory decree was entered sustaining them. The judge then reported the suit for determination by this court.

*D. Burstein*, for the plaintiff.

*A. P. Lowell*, for the defendants.

FIELD, J. This case raises a question as to the liability of directors of a Massachusetts corporation for the debts of

the corporation. It is a suit in equity brought in the Superior Court under G. L. (Ter. Ed.) c. 156, § 38, to establish the indebtedness of The Martin Trailer Co., herein referred to as the defendant corporation, upon certain promissory notes or bonds of said corporation, to enforce the personal liability, under G. L. c. 156, § 36, of the individual defendants as directors of said corporation for such corporate indebtedness, and to reach and apply in satisfaction of such personal liabilities of two of the individual defendants shares of stock in the defendant The First National Bank of Westfield. The bill was filed November 6, 1931.

The bill alleges that the plaintiff is the bearer of twenty-eight promissory notes made on or about May 1, 1929, of the defendant corporation, a corporation organized under the laws of Massachusetts, payable to bearer and identical (except as to an identifying number), and that the defendant corporation owes the plaintiff the amount of such notes and of the coupons attached thereto. An alleged copy of one of these so called notes is annexed to the bill. Therein the obligation is described as "one of a series of coupon bonds . . . all of which bonds are issued or to be issued under and secured by a mortgage, or deed of trust." The note or bond is in the amount of $1,000, dated May 1, 1929, and payable May 1, 1939, with interest at the rate of seven per cent per annum, payable semiannually, and bears coupons representing such semiannual interest payable upon each November first and May first from November 1, 1930, to May 1, 1939, and contains the following provision: "These bonds are issued without recourse against the stockholders, officers, or directors, under or by reason of any covenants or agreements, expressed or implied, in this bond or in the coupons hereof, or in said trust deed or mortgage." This provision is hereinafter referred to as the "no recourse clause."

It is alleged that the individual defendants were directors of the defendant corporation for various periods of time, that the debt of the defendant corporation to the plaintiff was contracted or entered into while the individual defendants were officers thereof, and that on or about September

26, 1930, the defendant corporation was duly adjudged bankrupt.

The facts alleged as the basis of personal liability of the individual defendants need not be recited in detail. In support of such liability on the part of all or some of the individual defendants it is alleged (a) that stock of the defendant corporation was issued in violation of G. L. c. 156, §§ 15 and 16, — in one instance by a vote of the stockholders on or about April 9, 1929, and an issue of the shares on or about May 1, 1929, and in other instances by votes of the stockholders and subsequent issues of the shares at later dates in the years 1929 and 1930 — and (b) that the individual defendants in the year 1930 made statements or reports required to be filed by G. L. c. 156, which were false and known to these defendants to be false. See § 36.

Several of the individual defendants demurred to the bill. In each instance the first ground of demurrer was that it appeared from the copy of the bond annexed to the bill that each of the bonds of which it was a copy was issued "without recourse against the stockholders, officers, or directors, under or by reason of any covenants or agreements, express or implied, in this bond or in the coupons hereof, or in said trust deed or mortgage." An interlocutory decree was entered that "it being agreed by the parties in open court that there is nothing in any trust deed or mortgage accompanying the coupon bonds or notes held by the plaintiff that could be thought to constitute a covenant or agreement, expressed or implied, creating any liability upon any stockholder, officer or director, and it appearing to the court that the first ground of demurrer alleged is well taken, even if no other ground is well taken, it is ordered, adjudged and decreed that said demurrers be and hereby are sustained." The plaintiff appealed from this decree and the trial judge reported to this court the question raised by the appeal.

G. L. c. 156, § 36, before its amendment by St. 1931, c. 313, was as follows: "The president, treasurer and directors of every corporation shall be jointly and severally liable for all the debts and contracts of the corporation contracted or

entered into while they are officers thereof if any stock is issued in violation of section fifteen or sixteen, or if any statement or report required by this chapter is made by them which is false in any material representation and which they know, or on reasonable examination could have known, to be false; but directors who vote against such issue, and are recorded as so voting, shall not be so liable, and only the officers signing such statement or report shall be so liable." By the amendment the words "or on reasonable examination could have known," were struck out and a provision in regard to reports of condition added. See G. L. (Ter. Ed.) c. 156, § 36. Since on the allegations of the bill the false statements or reports were known to the individual defendants to be false and since they were not contained in reports of condition, it is unnecessary in passing on the first ground of demurrer to decide whether the statute as it stood before or as it stands after the amendment controls. (No such decision is to be inferred from later references in this opinion to G. L. [Ter. Ed.] c. 156, § 36.) G. L. c. 156, § 37 (see G. L. [Ter. Ed.] c. 156, § 37), provides that directors shall be liable "for the debts and contracts of the corporation" in certain circumstances not shown by this bill. G. L. c. 156, § 38 (see also G. L. [Ter. Ed.] c. 156, § 38), provides in part that "A stockholder of a corporation shall be held liable for its debts and contracts under section thirty-five, and the president or treasurer, or a director of any such corporation, shall be held so liable under section thirty-six or thirty-seven, if the corporation has been duly adjudicated bankrupt. The president or treasurer, or a director, shall also be held so liable under section thirty-six or thirty-seven, if before a suit to enforce such liability is brought by a creditor of said corporation, a written demand by or on behalf of the creditor upon such corporation for the payment of his claim has been made, and said corporation has for ten days thereafter neglected to pay it. Except as above provided, no suit shall be maintained against a stockholder or officer for the debts or contracts of the corporation."

The demurrers were sustained rightly.

First. . The no recourse clause is a part of the contract

between the plaintiff and the defendant corporation, but, nevertheless, is available to the individual defendants as a defence to the bill if it is construed as applicable, on the facts alleged in the bill, to the statutory liability of the individual defendants as directors for the contractual obligation of the defendant corporation under the bond, and if so construed it is valid. It was said by Holmes, J., speaking for the court in *Brown* v. *Eastern Slate Co.* 134 Mass. 590, 592, of a statutory liability of stockholders for the debts and contracts of a corporation asserted in somewhat similar circumstances, that "the plaintiff could not strike at the members of that corporation in a court of equity through and by means of a transaction which bound him not to do so." And the principle is equally applicable to a suit in equity against directors.

Second. The no recourse clause of the bond is to be construed as applicable, on the facts alleged in the bill, to the statutory liability of the individual defendants as directors for the contractual obligation of the defendant corporation under the bond.

Clearly the words "without recourse" are not used in the technical sense in which they are used in a qualified indorsement of a negotiable instrument. When so used they are a part of the contract of the indorser and affect only the liability which, if these or similar words had not been used, would have been imposed on him as a result of his transfer of the instrument by indorsement. G. L. (Ter. Ed.) c. 107, § 61. *Aronson* v. *Nurenberg*, 218 Mass. 376. Here the words are a part of the contract of the obligor of the bond and there is an express agreement that the bonds are "issued" without recourse against "the stockholders, officers, or directors." The clause, therefore, cannot be construed as applicable merely to liabilities resulting from transfers after the bond had been issued, but its natural meaning is that a bearer of the bond by accepting it agrees that he will not enforce against stockholders, officers, or directors the obligations referred to in the clause.

The plaintiff contends, however, that the statutory liabilities of the directors did not arise "under or by reason of

any covenants or agreements, expressed or implied" in the bond, coupons, trust deed, or mortgage and, consequently, are not within the terms of the no recourse clause. This contention is unsound. There is, of course, no express covenant or agreement on the part of the directors to be liable on the bond or its coupons. Whether such an agreement on their part is implied need not be discussed (see, however, *Nickerson* v. *Wheeler*, 118 Mass. 295, 298; *Brown* v. *Eastern Slate Co.* 134 Mass. 590, 592; *Old Colony Boot & Shoe Co.* v. *Parker-Sampson-Adams Co.* 183 Mass. 557, 561–562; *Savage* v. *Shaw*, 195 Mass. 571, 574; *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312, 317, 319; *Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490; *Coombes* v. *Getz*, 285 U. S. 434, 442, 446, 448–449) for even if no such agreement is implied the liability of the directors, if any, arose "by reason of" the covenants or agreements of the defendant corporation in the bond. The defendant corporation is primarily liable on the bond and its obligation arose "under or by reason of" its covenants or agreements therein. The statutory liability of the directors is a secondary liability for the same obligation. *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312, 317, 319. See also *Byers* v. *Franklin Coal Co. of Lykens Valley*, 106 Mass. 131, 137; *Brown* v. *Eastern Slate Co.* 134 Mass. 590, 591. By the terms of the statute the directors' liability is for the "debts and contracts of the corporation." G. L. (Ter. Ed.) c. 156, § 36. This secondary liability, therefore, depends for its existence upon the existence of the obligation of the defendant corporation. It did not come into being prior to the creation of that obligation, and would be extinguished by the cancellation thereof. This is true even though the discharge in bankruptcy of a corporation does not extinguish the directors' liability, for such discharge does not cancel the obligation of the corporation but merely puts an end to the remedy against the corporation itself. *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312, 317. Nor does it follow from the decision in *Old Colony Boot & Shoe Co.* v. *Parker-Sampson-Adams Co.* 183 Mass. 557, 561, 562, relied on by the plaintiff, that the directors' liability did not arise

"by reason of any covenants or agreements . . . in this bond." It was there held that the liability of a director who became bankrupt did not "arise out of any contractual obligation or promise" so as to constitute it a debt "founded . . . upon a contract express or implied," provable against the estate of the bankrupt director, within the meaning of the bankruptcy act. This construction of the bankruptcy act results from an implication that a debt provable in bankruptcy must arise out of a contract of the bankrupt himself. But there is no ground in the broader language of the no recourse clause for an implication that this clause applies only to liabilities arising out of contracts of the directors. Compare *Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490, 494–495. On the contrary the use of the words "without recourse" indicates that the clause deals with secondary liabilities. And to say that the secondary liabilities imposed by statute upon the individual defendants as directors for the obligation of the defendant corporation under the bonds did not arise "by reason of" the covenants or agreements of that corporation therein would be to ignore the obvious. See *Babbitt* v. *Read*, 236 Fed. Rep. 42, 43–44.

A strong argument for construing the no recourse clause as applying to statutory liabilities is to be found in the fact that if it is not so interpreted it is meaningless. There is no liability upon stockholders or officers for obligations created by the bonds apart from the liabilities created by statute. G. L. (Ter. Ed.) c. 156, § 38. In *Brown* v. *Eastern Slate Co.* 134 Mass. 590, it was said of an agreement "that there should be no personal liability" on certain promissory notes of the corporation, that "No one was personally liable except by statute. The stipulation therefore must be taken to refer to statutory liability." See also *Downer* v. *Union Land Co. of St. Paul*, 113 Minn. 410, 413, 415; *Grady* v. *Graham*, 64 Wash. 436, 444. Furthermore the no recourse clause applies only to contractual obligations, and the statutory liability of stockholders and officers of a corporation is limited to "debts and contracts" of such corporation (§ 38). There is no statutory liability upon directors for torts committed by

the corporation. *Savage* v. *Shaw*, 195 Mass. 571. That the no recourse clause and 'the statute imposing liabilities on stockholders and officers deal expressly with the same kind of obligations is some indication that the parties to these bonds intended the no recourse clause to apply to the liabilities of stockholders and officers created by that statute.

It follows from what has been said that the no recourse clause in question is to be interpreted as if it had provided in terms that the directors of the defendant corporation should not be liable for the payment of such bonds by reason of any statute imposing liabilities upon them for the debts and contracts of the corporation.

The plaintiff, however, makes the further contention that the no recourse clause is not to be construed as relieving the individual defendants from liabilities imposed by statute for the issue of stock in violation of law or the making of false statements after the bonds were issued, but that, at most, it relieves them only from such statutory liabilities resulting from acts or omissions before or at the time the bonds were issued. (Since, on the allegations in the bill, the wrongful acts alleged, with the possible exception of the issue of stock on or about May 1, 1929, in pursuance of a vote of the stockholders on April 9, 1929, occurred after the bonds were issued, the no recourse clause so interpreted would not relieve the individual defendants from liability in the present case.)

The plaintiff bases this contention in part upon the words "are issued" in the phrase in the no recourse clause, the "bonds are issued without recourse," urging that these words speak only of the situation existing at the time the bonds were issued and make no provision for the future. It is natural to apply the words "are issued" to bonds and notes of a corporation, but they give to the no recourse clause no different meaning than it would have had if it had provided that the "contracts of the corporation are made without recourse" against stockholders, officers and directors under or by reason of the covenants and agreements referred to therein. In part, at least, the no recourse clause looks to the future, for no cause of action can come into existence against stockholders, officers or directors until the corporation's

covenants or agreements in the bonds have become operative and either there has been some breach thereof and the corporation has failed to pay the claim after demand and within the time fixed by the statute, or the corporation has been adjudicated bankrupt. G. L. (Ter. Ed.) c. 156, § 38. *E. S. Parks Shellac Co.* v. *Harris,* 237 Mass. 312, 314, 316. See also *Old Colony Boot & Shoe Co.* v. *Parker-Sampson-Adams Co.* 183 Mass. 557, 561; *Union Market National Bank of Watertown* v. *Gardiner,* 276 Mass. 490, 495. The no recourse clause, therefore, cannot be interpreted merely as a release of secondary liabilities which have matured at the time the bonds are issued, for if it is to have any meaning it must be construed as relieving stockholders, officers and directors from secondary liabilities of some kind maturing after the issue of the bonds.

There is nothing in the terms of the no recourse clause which limits its operation to secondary liabilities, maturing after the issue of the bonds, by reason of statutory violations before or at the time the bonds were issued, for the clause necessarily looks to the future, as already pointed out, and is general in its terms. And no such limitation can be read into the bonds from any presumed intention. The "best evidence of intention is to be found in the language used by the parties." *West* v. *Platt,* 127 Mass. 367, 372. The apparent intention of the parties as disclosed by the language of the bonds was that the bondholders in any event were to resort solely to the corporation and its assets for the payment of such bonds, and that they relinquished any remedy for the collection thereof which otherwise they might have had against the stockholders, officers or directors by reason of covenants and agreements in the bonds. The bonds purport to be secured by mortgage and the bondholders may have regarded such mortgage as furnishing adequate security for the payment of the bonds and the possibility of recourse to stockholders, officers and directors for such payment as of slight importance. It cannot be assumed that the bondholders did not intend to relinquish their remedy against stockholders, officers and directors because they did not know at the time the bonds were issued that circumstances

would arise in the future which would make the remedy relinquished of substantial importance to them. And it is not alleged that they relinquished their remedy against stockholders, officers and directors in reliance upon any false representations of the intentions of the corporation, its stockholders, officers or directors as to their future actions or of any other material existing fact, or even by reason of any mistake as to such facts — whatever the effect of such mistake might be. Furthermore, it well may have been recognized that there might be statutory violations after the bonds were issued which would not place the bondholders in any less favorable position than they were in at the time the bonds were issued. Indeed in the present case, so far as appears, the alleged illegal issues of stock after the bonds were issued did not reduce the assets of the corporation available for payment of the bonds and, obviously, the bondholders did not rely upon false statements or reports made after they received the bonds. On the other hand it cannot be pronounced unlikely that the corporation desired to protect its stockholders, officers and directors against possible secondary liabilities resulting from subsequent statutory violations even though such violations were not contemplated as probable. The corporation if properly advised would have known that there were statutory provisions which imposed liability upon officers and directors for statutory violations, even if such officers and directors acted in good faith (*Berkshire Coal & Grain Co. Inc.* v. *Wing*, 261 Mass. 38, see also *United Oil Co.* v. *Eager Transportation Co.* 273 Mass. 375, 381), and the violations did not of themselves result in damage to the bondholders. Compare *Nickerson* v. *Wheeler*, 118 Mass. 295, 299. The propriety of limiting this liability in some respects was recognized by the Legislature by amending G. L. c. 156, § 36, by St. 1931, c. 313 (see G. L. [Ter. Ed.] c. 156, § 36), and it cannot be said to have been unnatural that the corporation should have sought some analogous limitation of liability by contract. But without further speculation as to the undisclosed intentions of the parties to the bonds it is sufficient to say that it is not so inherently improbable that relinquishment was

intended of the remedy against stockholders, officers and directors on their secondary liability resulting from statutory violations after the bonds were issued that exclusion of such liability from the operation of the no recourse clause, broad enough in terms to include it, is to be implied.

It does not follow from our interpretation of the no recourse clause that it is to be interpreted as barring any remedy of the bondholders, independent of the statute, based upon fraud or other wrongful act of stockholders, officers or directors of the corporation. No such case is stated in the bill or now requires our consideration. Compare *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 60; *Babbitt* v. *Read*, 236 Fed. Rep. 42, 46; *Downer* v. *Union Land Co. of St. Paul*, 113 Minn. 410, 415, 416–417; *Small* v. *Sullivan*, 245 N. Y. 343, 356. See also *Granlund* v. *Saraf*, 263 Mass. 76, 79. The plaintiff by its bill seeks only to enforce the statutory liability of directors for the obligation of the corporation under the bonds. We decide merely, so far as the interpretation of the no recourse clause is concerned, that recourse under G. L. (Ter. Ed.) c. 156, §§ 36, 38, to the directors for the payment of the bonds comes within the meaning of the prohibition of the clause.

*Third.* The no recourse clause, as we interpret it, is valid to the extent, at least, that it precludes enforcement, for the purpose of compelling payment of the bonds by the individual defendants, of the secondary liabilities imposed upon them as directors of the defendant corporation by G. L. (Ter. Ed.) c. 156, § 36, for the debts and contracts of the corporation.

1. The clause is not invalid for the reason that in effect it releases the individual defendants from liabilities which had not matured at the time the bonds were issued.

Rights which have not matured may be released. The law on this point was stated by this court in *Pierce* v. *Parker*, 4 Met. 80, 89, in language which was quoted with approval in the recent case of *Radovsky* v. *Wexler*, 273 Mass. 254, 257, 258, as follows: ". . . while a possibility merely is not the subject of a release, yet . . . in all cases where

there is an existing obligation or contract between parties, although such obligation or contract is executory and dependent also upon contingencies that may never happen, still, if the party, in whose favor such obligation or contract is made, or who is liable, by force of it, to suffer damage if it is not performed by the other when the contingency happens, shall execute a release of all claims and demands, actions and causes of action, &c. correct in point of form, and having at the time of executing the release such obligation or contract in view, as one of the subjects upon which the release shall operate, then such release shall be held as a good and valid bar to any suit which may be afterwards brought upon such obligation or contract, or for money had, received or paid, upon the future happening of the contingency, in consequence of which the plaintiff sustains damage, and but for such release would have had a perfect right of action." Such a release of a right which has not yet arisen, like a writing which in terms promises that a future right shall be released or discharged, is to be interpreted as a contract which is self-operative to discharge the right when it arises. American Law Institute, Restatement of the Law, Contracts, § 402, Comment (b). *Clarke* v. *Ames*, 267 Mass. 44, 47. The principle stated in *Hastings* v. *Dickinson*, 7 Mass. 153, 155, and quoted and followed in *Commissioner of Insurance* v. *Bristol Mutual Liability Ins. Co.* 279 Mass. 325, 334, that "a release of a future demand, not then in existence, is void," is applicable to "a possibility merely," but is not applicable to secondary liabilities, though contingent, of stockholders, officers and directors upon existing covenants and agreements of the corporation which are more than mere possibilities.

The no recourse clause is not a release in the strict sense, nor does it deal with rights arising out of previously existing obligations of the corporation. The bonds which embody the obligations of the corporation contain also the agreements, to which the bondholders by accepting the bonds assented, that the bondholders should have no recourse to the secondary liabilities of the stockholders, officers and directors for the payment of the bonds. But the

principles above stated are not limited in their application to instruments which purport to be releases in the strict sense. They are applicable to agreements under seal or supported by consideration which disclose an intention that the secondary liabilities of stockholders, officers and directors when they mature shall be discharged without further action by the bondholders. See *Brown* v. *Eastern Slate Co.* 134 Mass. 590, 591. Nor is there anything in the fact that the bondholders' agreements are contained in bonds which create the obligations of the corporation taking them out of the principles stated and rendering them invalid with respect to future rights founded upon those obligations. To paraphrase the language of *Pierce* v. *Parker*, 4 Met. 80, 90, the bondholders are not, because their claims were contingent, *in* the bonds for the liabilities of the stockholders, officers and directors founded thereon, but *out* of the bonds for the discharge of such liabilities.

2. The no recourse clause is not invalid as against public policy.

Generally speaking public policy requires compliance with statutes regulating the management of corporations. But whether the effect of any specific statute can be avoided by contract depends upon the purpose for which the statute was enacted. The test was stated in *Washington National Bank* v. *Williams*, 188 Mass. 103, 107, in the following language: "where laws are enacted on grounds of general policy their uniform application for the protection of all citizens alike is desirable, and an agreement to waive their provisions is generally declared invalid, but where they are designed solely for the protection of rights of private property, a party who may be affected can consent to a course of action, which if taken against his will, would not be valid," and is applicable where, as here, a party instead of consenting to a course of action agrees to discharge liabilities which may result from a course of action.

The purpose of the statute under consideration and the attributes of the liability thereby created are to be determined in the light of the principle that a "statute imposing individual liability for corporate debts is to be construed

strictly, and liability is not to be extended beyond the limits prescribed by those provisions of the statute." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 60. See also *Cary* v. *Holmes*, 2 Allen, 498, 500.

The statutory provisions imposing liability upon directors of a corporation for the debts and contracts of such corporation, as our decisions have recognized, are designed solely for the benefit of creditors. They are designed for the protection of the property rights of individual parties to transactions with the corporation rather than for the protection of the general public. In *Nickerson* v. *Wheeler*, 118 Mass. 295, 298, it was said of a liability of officers for the debts of the corporation, based upon failure to file an annual certificate, that "It is a liability intended to secure the making of the proper certificates, by exposing the officers to a heavy responsibility; but when the provisions of the law have been sought to be enforced against the officers, they have not been construed with the strictness of a penal statute, but have been treated as remedial in their character and intended for the benefit of creditors." And in *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312, 319, it was said of the liability of directors for corporate debts founded upon the filing of false statements of condition that "The liability is not based on a public wrong, but protects private rights; it is a private remedy for a wrongful act arising from a breach of duty owed to corporate creditors and is created for their benefit only. The Commonwealth is not a party to the proceedings. Being secondary, the liability secures payment of obligations which the corporation has failed to meet. It is compensatory and remedial, because it gives the plaintiff payment of an existing obligation and nothing by way of enlargement of its rights against the corporation; hence it does not merely punish the party made liable. It is something which the creditor had a right to consider and to rely upon when the debt was created." See also *Child* v. *Boston & Fairhaven Iron Works*, 137 Mass. 516, 521; *Thacher* v. *King*, 156 Mass. 490, 494–495. In conformity to this conception of the liability it is provided by statute that the suit shall not "abate by reason of the death of a de-

fendant" (G. L. [Ter. Ed.] c. 156, § 39), and it has been held that a claim founded on such liability, though not put in suit during the lifetime of the director, survives his death (*Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490, 493), and that suit upon such liability is not barred by the statute of limitations applicable to "Actions for penalties or forfeitures under penal statutes." G. L. (Ter. Ed.) c. 260, § 5.  *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312, 319.  The same kind of persons are intended to be benefited by this statute — unless a creditor is a stockholder but not an officer of the corporation, see *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99 — as are intended to be benefited by statutes imposing liability upon stockholders for debts and contracts of the corporation.  See *Potter* v. *Stevens Machine Co.* 127 Mass. 592, 594.  Whether the rights of creditors against directors created by the statute are contractual in such a sense that they cannot be impaired by subsequent legislation need not be decided in this case.

The statute under consideration is materially different in its purpose from the statute considered in *Corey* v. *Griffin*, 181 Mass. 229.  That statute was "intended to suppress a well known species of gambling," and its object was "not to punish the winner nor to protect the loser as such, but simply to prevent this kind of gambling by subjecting the participants to a liability . . . ."  Page 232.  Here, on the contrary, the purpose of the statute is not to prevent transactions with corporations, but to protect persons engaged in such transactions.  The present statute, also, differs in its purpose from the statute considered in *Desseau* v. *Holmes*, 187 Mass. 486, which gave to conditional vendees of personal property rights of redemption.  In that case it was pointed out that the statute was passed for the protection of such conditional vendees, but it was interpreted as having a public purpose in that "improvident persons, in straits to obtain money, would be likely to make contracts, the literal enforcement of which would work great hardship upon them, to the detriment of the public as well as themselves."  Page 488.  See, however, *Drake* v. *Metropolitan Manuf. Co.* 218 Mass. 112, 115; *Ferranti* v. *Lewis*, 271 Mass. 186, 189.  No

such purpose to protect creditors of corporations against the consequences of their own agreements, not induced by fraud, is disclosed by the present statute. The statute imposing liability on stockholders, officers and directors for debts and contracts of the corporation is not based upon the probable improvidence or financial straits of the corporation's creditors. "An investor can hardly be put in the class of those not responsible for the clear meaning of the instruments on which he buys," at least in the absence of a clear legislative intention to do so. *Babbitt* v. *Read*, 236 Fed. Rep. 42, 44. Statutes for the protection of investors are ordinarily directed to protection against deception. Compare *Kneeland* v. *Emerton*, 280 Mass. 371, 378.

Plainly, in the absence of fraud, a cause of action already accrued against a director upon his statutory liability for obligations of the corporation under the bonds may be released or discharged. See *Wall* v. *Metropolitan Stock Exchange*, 168 Mass. 282. So also, where, before an obligation is incurred by a corporation, there has been a failure to comply with statutory requirements, the creditor, when contracting with the corporation may say in advance that he will not rely upon such previous failure as a ground for enforcing individual liabilities arising later. Such was the decision in *Brown* v. *Eastern Slate Co.* 134 Mass. 590, as to the statutory liabilities of stockholders resulting from their failure to make full payment for their stock as required by statute (St. 1870, c. 224, §§ 27, 32, 39, St. 1875, c. 177, §§ 1, 2, St. 1876, c. 1, Pub. Sts. c. 106, §§ 46–48). Though failure to comply with this statutory requirement occurred before the agreement was made with the creditors, the secondary liabilities of stockholders based thereon did not arise until after the agreement was made. Page 591. To this extent, at least, the agreement looked to the future. And the principles applied in *Brown* v. *Eastern Slate Co.* seem to have been accepted generally. See *United States* v. *Stanford*, 70 Fed. Rep. 346, 363. *Babbitt* v. *Read*, 236 Fed. Rep. 42, 44. *Carnahan* v. *Campbell*, 158 Ind. 226, 232. *Bush* v. *Robinson*, 95 Ky. 492, 497. *Robie* v. *Holdahl*, 175 Minn. 44, 45. *Grady* v. *Graham*, 64 Wash. 436, 443–444. See also

Cook on Corporations, (8th ed.) § 216, and cases collected in Note 40 Am. L. R. 371. A provision imposing such liabilities upon stockholders "is solely for the benefit of those dealing with the corporation, and may be waived by them." Morawetz, Corporations (2d ed.) § 871. See also Fletcher Cyc. Corp. (Perm. Ed.) § 6422. It is implied if not expressed by the authorities cited that such a waiver of liability is not against public policy. Indeed in *Marfield* v. *Cincinnati, D. & T. Traction Co.* 111 Ohio St. 139, 151, in sustaining the validity of the no recourse clause in a bond against the contention that it was contrary to public policy it was suggested that such a clause might be in the interest of sound policy in order to reserve the stockholder's liabilities for the benefit of unsecured creditors. And in our own statutes imposing liabilities upon "officers and members or stockholders" of foreign corporations for debts and contracts of those corporations it is provided in terms that "No officer, member or stockholder shall be liable" under such provisions "for any bonded or mortgage debt of a foreign corporation." G. L. (Ter. Ed.) c. 181, §§ 14–16. We see no adequate reason in public policy for distinguishing, in respect to the power to make an effective agreement, between an agreement not to rely upon statutory liabilities of stockholders arising in the future based upon previous statutory violations and an agreement not to rely upon statutory liabilities of directors so arising based upon previous statutory violations by them. In each instance the secondary liabilities are created by statute solely for the benefit of creditors, and creditors, or some of them, agree, so far as they are concerned, to look to the primary liability of the corporation for payment of its obligation rather than to secondary liabilities therefor.

Nor do we perceive any adequate reason in public policy for limiting the effect of a no recourse clause in the case of directors to secondary liabilities based upon statutory violations occurring before the bonds were issued. Nothing in *Brown* v. *Eastern Slate Co.* 134 Mass. 590, which dealt with liabilities of stockholders, so limits the effect of agreements of creditors not to enforce statutory liabilities. The

violation there considered though beginning before the agreement was made continued after that time, since the capital stock was never fully paid in. Compare *Chase's Patent Elevator Co.* v. *Boston Tow-Boat Co.* 152 Mass. 428, 429, 431. The bondholders here do not purport to agree that the statutes may be violated in the future by the directors, but agree merely that they will not enforce their private rights growing out of such violations. Remedies of other creditors and of stockholders (see G. L. [Ter. Ed.] c. 156, § 16) remain unaffected. Only rights which may accrue to the bondholders as individuals are to be discharged, and these rights were created solely for their benefit. The statutory provisions in question are "for the protection of rights of private property" of creditors (see *Washington National Bank* v. *Williams*, 188 Mass. 103, 107), and the no recourse clause affects only the "rights of private property" of the bondholders who are parties thereto. The mere fact that the liabilities discharged are to arise out of statutory violations in the future is not sufficient to invalidate the agreement. Even agreements not to enforce purely private rights which, but for these agreements, would result from future tortious acts have been sustained as valid (see *Freeman* v. *United Fruit Co.* 223 Mass. 300, 303, and cases cited, *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, *Clarke* v. *Ames*, 267 Mass. 44, 47–48, and cases cited), as have agreements affecting remedies for future breaches of contract (see *Ferranti* v. *Lewis*, 271 Mass. 186), though doubtless such agreements are to be scrutinized carefully for possible deception or oppression or harm to the public generally. Agreements which have been held unenforceable because contrary to public policy purported to discharge private rights arising out of violations of statutes enacted for the benefit of the public generally or out of other breaches of public duty. Compare *Corey* v. *Griffin*, 181 Mass. 229; *Desseau* v. *Holmes*, 187 Mass. 486; *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 76; *Bigelow, Kennard & Co. Inc.* v. *Boston*, 254 Mass. 53, 56; *Clarke* v. *Ames*, 267 Mass. 44, 47–48. "There is nothing contrary to the

law or to public policy in an agreement upon valid consideration between competent parties to the effect that the creditor in case of default shall look exclusively to a fund for the payment of the amount and shall not rely upon the personal obligation of the debtor." *Baker* v. *James*, 280 Mass. 43, 47, and cases cited. Such an agreement closely resembles in principle the no recourse clause under consideration.

The no recourse clause is not invalid as applied to liabilities resulting from subsequent violations of law unless on the ground that it tends to promote such violations. But even a contract for protection, by way of indemnity or otherwise, against the consequences of illegal acts or omissions resulting in injury or loss to third persons is not invalid as tending to promote such illegal acts or omissions where it does not appear that illegal conduct is intended or that the contract on its face provides for or promotes such conduct. *C. F. Jewett Publishing Co.* v. *Butler*, 159 Mass. 517, 520. No allegation is made in this case that statutory violations were intended and the no recourse clause on its face does not provide for or promote such violations. This clause may have been inserted in the bonds out of abundant caution to protect directors, as well as officers and stockholders, against possible but unlikely secondary liabilities to the bondholders. Compare Williston, Contracts, § 1751. And there is much less reason for holding unenforceable a contract for protection against the consequences of illegal conduct to the parties to the contract than a contract for protection against the consequences of illegal conduct to third persons. The risk of liability to other persons dealing with the corporation remains as an incentive to compliance with the statutory requirements and if no other persons deal with the corporation nobody, other than the bondholders, can suffer injury or loss by reason of statutory violations. Clearly it is for the advantage of all persons dealing with a corporation that its directors comply with statutory requirements, but it is at least debatable whether relinquishment by bondholders of their rights to enforce secondary liabilities arising out of such violations is

for the advantage or disadvantage of other creditors of the corporation. In any event, in the absence of a legislative declaration of public policy, it cannot be said that the bond-holders owe such a duty to other creditors that they cannot relinquish their purely private rights to enforce secondary liabilities of directors because such relinquishment may tend in some degree to encourage violations of statutes passed solely for the benefit of creditors. Obviously the statutes in question are not criminal in nature so that an agreement in advance to discharge secondary liabilities of directors tends to stifle prosecution for such violations.

Though the precise question here involved has not previously been decided by this court, we think the conclusion we have reached necessarily follows from the interpretations which have been put upon pertinent statutes and from the decisions in analogous cases. See also Fletcher Cyc. Corp. (Perm. Ed.) § 1333; Thompson, Corp. (3d ed.) § 1466. The casual language in *Swancoat* v. *Remsen*, 78 Fed. Rep. 592, 594–595, not required for the decision of that case, suggesting that such a no recourse clause would be contrary to public policy does not persuade us that our conclusion is erroneous. No authoritative decision adverse to the result reached by us has come to our attention. Cases like *Downer* v. *Union Land Co. of St. Paul*, 113 Minn. 410, and *Small* v. *Sullivan*, 245 N. Y. 343, unlike the case at bar, deal with immunity from future fraudulent acts and are distinguishable in accordance with established principles. See *Granlund* v. *Saraf*, 263 Mass. 76, 79.

It follows that the no recourse clause precludes recovery by the plaintiff in this suit and that the demurrers were sustained rightly on the first ground alleged therein.

*Interlocutory decree sustaining demurrers affirmed.*