## HUME v. AMERICAN–WEST AFRICAN LINE, Inc., et al.

District Court, S. D. New York.
Feb. 3, 1941.

'Gazan & Caldwell, of New York City, for plaintiff.

Hunt, Hill & Betts, of New York City (William Logan, Jr., and Helen Tuohy, both of New York City, of counsel), for defendants.

CLANCY, District Judge.

Plaintiff burned his hand on June 20, 1940, while engaged as a seaman on a vessel of the defendant, Moore-McCormack Lines, Inc. He was treated first at the Broad Street Hospital and then, upon complaining to that defendant's claim adjuster, was told to attend the Marine Hospital and did so. On July 1, 1940, the claim adjuster gave him $15. He did not discuss settlement but instead told him to obtain an abstract from the Marine Hospital to determine whether or not there would be any scars. This engagement was repeated on July 8th with like results. On July 15th, another adjuster saw him for the first time. The plaintiff professed a desire to settle his claim and asked for $250. He was told by the adjuster to report to a doctor employed by the defendant company for examination, the adjuster making the appointment with the doctor, and to report back in a week with his certificate of discharge from the Marine Hospital, when the company's private doctor would probably have made his report. He was then paid another $15. On July 23rd he called at the office of the claim adjuster with his certificate of discharge from the Marine Hospital which read: "Dis-

charged—Fit for duty July 15, 1940." The company doctor's report was in the claim adjuster's hands. Plaintiff himself says the company's doctor did not examine his lungs and defendant affirms its ignorance then of any sign of tuberculosis in plaintiff. The sum of $150 was agreed upon in settlement to include the three $15 payments already made. Plaintiff was told he must sign a release and that by executing it he "would be signing his life away." He said he knew this but wanted to go back to his Nebraska home and signed a petty cash voucher for $150 and executed, in triplicate, a general release running to the defendant, Moore-McCormack Lines, Inc. The plaintiff read the release in the presence of the claim adjuster and filled out the blanks in all three copies in ink. He was again told he was signing his life away. Three witnesses to his execution of this document signed the release. In their presence he acknowledged that he fully understood its contents. One week after the delivery of the release, plaintiff found he was suffering from tuberculosis. About four weeks later a summons was served on both defendants with a complaint stating an alleged cause of action for negligence causing it. Both defendants move on affidavits setting up the release and the facts attending its execution for summary judgment.

■ The plaintiff's papers in opposition to this motion do not even pretend to contradict any of the assertions made by the defendant, with the single exception of a line in the plaintiff's attorney's affidavit that "The plaintiff merely signed where indicated by the defendant." Whether the defendant indicated where plaintiff was to sign or not does not seem important. There is no hint of a claim of coercion or duress or fraud. Plaintiff signed the release but once and then it was over the words: "This is a release." But in addition, he wrote responsive answers to several questions. In answer to question (6) D: "What is this paper which you are signing?" he wrote in, in his own hand: "release of everything." He answered "yes" in his own handwriting to questions inquiring whether he intended his answers to be relied on, whether he had read the papers from beginning to end, and whether he knew what he was signing. He wrote: "yes" to the inquiry whether he knew that the paper he was signing "settles and ends every right or claim you have for damages as well as for past or future maintenance." All of these questions are in large, clear print of a vermilion color.

Even the plaintiff's attorney, in his brief, professes no doubt that the claim agent may have warned his client that he was "signing his life away." No single circumstance attending the document's execution is disputed. There is no claim made that the plaintiff is ignorant or was lacking in intelligence and we think it fully established that his execution of the release was his own understanding, deliberate act performed after a free, untrammeled and comprehending meeting of his mind with that of his employer's representative. We are unable to discern any question of fact whatever to warrant any hesitation in reaching this conclusion.

■ We take, as a serious consideration, the fact that the plaintiff is a seaman and, therefore, a ward of the Court. But unless this fact, standing alone, voids a release, we cannot save him in his present situation. Callous though it may now sound, there is no ground asserted on which to base a conclusion that there was any inadequacy of consideration. Indeed, the answering affidavit does not even mention that as a possible defense to the release. Inadequacy of consideration alone would be no ground for cancellation when unaccompanied by other inequitable incidents. Pomeroy, 4th Edition, § 928. Any conclusion one might strain to reach that an inadequacy existed here and that it was so gross that fraud was a necessary conclusion—and without such a conclusion we are unable to relieve the plaintiff—is forbidden by the plaintiff's own failure to question the defendant's statement and description of what transpired at the time of the execution of the release and by his omission to present to the Court any issue of fraud or overreaching. We have reached the conclusion that if the release in this case is not valid and binding upon the plaintiff, that it is inconceivable under what circumstances a valid general release may be executed by a seaman.

■ The determination of the meaning and effect of the release thus becomes a question of law. The release is a printed form and its contents are comprehensive. It releases the defendant, Moore-McCormack Lines, Inc., and its employees and charterers and ship from every cause of action which "I now have, or may hereafter have on account of injuries and illness suffered by me as follows:". There then follows in typewriting: "Burn 3rd degree of right hand and fingers; burn 1st degree

of forehead, face, left forearm June 20, 1940." There then follows in print, with the exception of the word "release" which is written in the plaintiff's hand: "And, in addition to that, I release them from each and every right and claim which I now have or may hereafter have because of any matter or thing which happened before the signing of this paper, it being my intention by the signing of this paper, to wipe the slate clean as between myself and the parties released, even as respects injuries, illnesses, rights and claims not mentioned herein or not known to me. (1) I know that this paper is much more than a receipt. It is a release. I am giving up every right I have. (2) In making up my mind to sign this release I am using my own judgment without regard to anything that has been told me by anybody. (3) I know that in signing this release I am, among other things, now settling in full for all injuries, illnesses and disabilities which I have had already, which I have now, and which I may have in the future, either because of the particular occurrence mentioned above or because of any other occurrence in the past, or because of both, even though I do not know that I have had already, have now or may have in the future such injuries, illnesses and disabilities, and even though they are not mentioned particularly in this release."

Any constriction of the intent of the release to the injuries described in the typed insertion would import the violent deletion of the next clause stated to be "in addition to that" and including future or unknown injuries and the several clauses which explicitly include other injuries or causes of injury.

■ Immediately before the "therefore" clause of the release appears the question, in vermilion print: "Do you know that signing this paper settles and ends every right or claim you have for damages as well as for past and future maintenance, cure and wages?" The plaintiff answered, in his own hand: "yes." The same argument forbids a narrow construction of this clause to subvert and destroy the effect of the other broader clauses of the instrument. Another conclusion inevitable from it is that the release was not intended by either party to release no more than plaintiff's claim for maintenance and cure.

■ It is apparent that whatever may have been the failure, omission or neglect of the Marine Hospital is immaterial. The plaintiff was not relying on it for he said: "In making up my mind to sign this release I am using my own judgment without regard to anything that has been told me by anybody." But even if he did and accepted its report that he was "fit for duty" the release explicitly and beyond dispute postulated unknown or future damage and nevertheless released the defendant from liability for any even future effect of acts or omissions earlier transpiring. Neither the plaintiff nor the defendant contemplated tuberculosis, objectively or as a concrete reality, for neither was aware of its existence or imminence. But the plaintiff, when he executed the release, knew as well the existence of the facts and conditions now complained of as he did on the day when he executed the complaint or does now. He nowhere disputes his own intelligence and understanding of his act. The negligent commissions or omissions of the defendant may be said to have assumed a different aspect as a cause now that some damage has resulted but their character as facts has not changed. When the release was executed, they were, if facts, possible causes of damage in bringing on diseases of many types or kinds, of which tuberculosis is but one.

■ To say that because neither party knew of the imminence or existence of tuberculosis there was a mutual mistake, contradicts the language of the release. Common ignorance of the parties does not constitute a mutual mistake. Miles v. New York Central Railroad Co., 195 App.Div. 748, 178 N.Y.S. 637, 185 N.Y.S. 941. Plaintiff does not attribute any knowledge of his tubercular condition to the defendant. On the contrary he says the defendant's doctor did not conduct any examination that might have revealed it, so that assuming his tuberculosis as an existing fact, which he does not allege and which we do not find, there is no imputation of even passive fraud to the defendant. If the plaintiff persists that he alone did not contemplate other injury than the burn or intend his release thereof, his mistake, if such it were assumed to be, would still be unilateral. Unilateral mistake of itself does not make a contract voidable. Restatement of Contracts, § 503; Metzger v. Aetna Life Ins. Co., 227 N.Y. 411, 125 N.E. 814; New York Life Ins. Co. v. McMaster, 8 Cir., 87 F. 63.

It is not made to appear whether the plaintiff's tuberculosis had developed as a disease, though undetected, before the delivery of the release or within the week intervening between that and the discovery of the tuberculosis. If we assume the latter case to be the fact the plaintiff, when he delivered his release, did not have either claim or a cause of action arising from the matters now complained of because negligence is not actionable without damage. Nicholson v. The Erie Railway Co., 41 N.Y. 525, 526; Comstock v. Wilson, 257 N.Y. 231, 177 N.E. 431, 76 A.L.R. 676. Whether a party—even a seaman—may have forgone a recovery for unknown as well as known causes of action poses a question of fact and not one of law. Kirchner v. The New Home Sewing Machine Co., 135 N.Y. 182, 31 N.E. 1104. We have found as a fact that in this case the plaintiff did by intelligently delivering this release which says so. We know of no law limiting a seaman's right to contract if it be established that his action is intelligent, free and without claim of fraud. Sitchon v. American Export Lines, Inc., 2 Cir., 113 F.2d 830. We know of no rule of public policy which does or should forbid the exercise of his own judgment when it is the result of full consideration and understanding of his act in dealing at arm's length with his employer's representatives. And while, when he executed the release we may assume that only a possibility of future harm existed, he was still able to contract to release the defendant from responsibility for that future harm. Though he could not actually release what was then only a possibility since a release acts in presenti, the release, nevertheless, will be construed as a contract and when the harm subsequently develops, it will be enforced. Restatement of Contracts, § 402 (2) comment b; Continental Corp. v. Gowdy, 283 Mass. 204, 186 N.E. 244, 87 A.L.R. 1039.

The release ran only to the defendant, Moore-McCormack Lines, Inc., and the motion is to release as well the other defendant, American-West African Line, Inc., on whose vessel the plaintiff made an earlier trip. The complaint states three causes of action; single causes against each of the defendants and a further cause for joint liability. The damage in all three is identical; namely, pulmonary tuberculosis.

It is impossible to determine on this motion what effect the release of the defendant, Moore-McCormack Lines, Inc., has upon the liability, of the American-West African Line, Inc. The plaintiff, we have held, released the defendant, Moore-McCormack Lines, Inc., for whatever injury may have been caused by its negligence. Just what this is, presents a question of fact. What part of his damage, if any, resulted from a coalescence of wrongs inflicted upon him by both defendants and if that be the case, when the coalescence of causes began is a question of fact. It is only after his damage is made to appear the result of the coalescence of an injury worked by the defendant, Moore-McCormack Lines, Inc., with an injury wrought by the American-West African Line, Inc., that the ultimate result becomes the indivisible effect of their concurring wrongs. Whatever this amounts to, as it shall be determined, has been discharged by the release to the Moore-McCormack Lines, Inc. It follows that it has been satisfied also as against the American-West African Line, Inc. The Uniform Joint Obligations Act, Art. 8, Debtor and Creditor Law, makes this the law of New York State. It is expounded in Parchefsky v. Kroll Bros., 267 N.Y. 410, 196 N.E. 308, 98 A.L.R. 1387. In that case a physician's negligence aggravated the injury inflicted by an original tort feasor. The Court said that the two were not joint tort feasors but that the position of the two becomes in many respects analogous to the position of joint tort feasors. The Restatement of Torts, vol. 4, § 885, comment (c) is in agreement. We find no contradiction of this in Milks v. McIver, 264 N.Y. 267, 190 N.E. 487. That case presents only the converse of the one we are deciding. For any injury and its natural consequences caused solely by the negligence of the American-West African Line, Inc., and without contribution of causation by the Moore-McCormack Lines, Inc., the defendant, American-West African Line, Inc., is solely responsible. These conclusions apply as well to the action for care and maintenance as to the cause of action for negligence.

Motion for summary judgment in favor of the defendant, Moore-McCormack Lines Inc., is granted. The motion is otherwise denied.