ARNOLD CANNER & another *vs.* SAMUEL CLIVE COHEN.

Middlesex.    October 7, 1952. — December 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Broker*, Commission.    *Contract*, Consideration, What constitutes, With broker.

Evidence of the circumstances in which a real estate broker, entitled by a written agreement with a buyer and the seller of a house under construction to be paid a commission by the seller "upon final account between the buyer and the seller" of the purchase price and credits to the buyer against it for expense incurred in his completing the construction, almost immediately after the execution of the written agreement orally agreed with the buyer that the buyer would take over the obligation of paying the commission after paying all such expense and that the broker "would wait until the end" for the commission, warranted findings that the oral agreement was independent of the written agreement and was supported by consideration; and the broker was entitled to recover from the buyer under the oral agreement although no "final account" was ever had between the buyer and the seller.

The fact that a real estate broker had recovered a judgment, which remained unsatisfied, against a seller of real estate for a commission under a written contract with the seller and the buyer requiring the seller to pay it did not bar an action by the broker against the buyer on an independent oral agreement between the broker and the buyer whereby the buyer for consideration undertook to pay the commission.

CONTRACT.    Writ in the Superior Court dated June 28, 1950.

The action was tried before *Beaudreau*, J.

*Paul L. Keenan*, (*Harry N. Cushing* with him,) for the defendant.

*Stanley M. Epstein*, for the plaintiffs.

RONAN, J.    This is an action of contract by partners to recover a broker's commission which was due from the seller and which, it is alleged, the buyer, the defendant, orally agreed to pay under certain conditions.    The plaintiffs had a verdict.    The action is here upon the exception

of the defendant to the denial of a motion to direct a verdict for him.

In November, 1949, one Blumit was constructing a house for which he requested the plaintiffs to procure a customer, and agreed to pay them a commission if they procured a customer, which the plaintiffs did when they secured the defendant Cohen. Blumit and Cohen entered into a written buy and sell agreement on November 23, 1949. By the terms of that agreement Blumit agreed that he would transfer title to the house upon demand of the buyer and assign to him all his interest in a construction mortgage then on the premises, crediting to the buyer any sum received by the seller under this construction loan. The premises were to be conveyed subject to a second mortgage held by one Mahoney. The buyer agreed to pay each week for all labor performed, to guarantee a plumbing bill of $2,800, and to pay for all materials used or to be used in the construction of the house. All moneys advanced by the buyer were to be applied to the purchase price of $22,500. This written agreement contained a provision by which the seller agreed to pay a commission to the plaintiffs "upon final account between the buyer and the seller." The agreement was assented to in writing by the plaintiffs.

The defendant paid $500 upon execution of this agreement, and the balance of $22,000 was to be paid in cash upon completion of the house on or before December 31, 1949, less the amounts for which the defendant was entitled to credit. Attached to this written agreement was a list of items or specifications which the buyer was to have performed at his expense and credited to the purchase price.

There was evidence that Canner and Cohen agreed almost immediately after the execution of the written buy and sell agreement that Cohen would take over the obligation of paying the commission of the plaintiffs after paying all the other creditors who furnished work and labor on the items set forth in the specifications attached to the buy and sell agreement, and that Canner "would wait until the end" for his payment, until all such other creditors were paid

and "until the house was completed." Both Canner and Cohen knew that Blumit was being harassed by creditors. Canner did not want to rely upon Blumit's promise to pay. It was not certain at that time when, if ever, the house would be completed under the arrangements which Cohen made with Blumit. Although the buy and sell agreement provided that it should be substantially completed on or before December 31, 1949, the time for completion might well be after any final accounting between Blumit and Cohen might be had. In fact this is what occurred when Blumit became no longer interested as soon as it appeared to him that nothing was due him from Cohen. On the other hand, Cohen was anxious to get the house completed and in fact was obliged to move in on February 1, 1950, because his apartment had been let to someone else. Cohen testified that after February 13, 1950, the date when Blumit and Cohen conferred for five hours on the only accounting they ever had, he paid $987.46 in order to complete the house. The time for completion depended upon the happening of an event which could be definitely fixed while the time for an accounting rested upon contingencies more or less of an uncertain nature. The plaintiffs were willing to wait for the payment of their commission until the house was completed whenever that time might arrive. In the light of the facts which occurred, it could be found that their agreement amounted to a delay in payment and was a different undertaking from that they had made in the buy and sell agreement with Blumit. We cannot say that the oral agreement was lacking in consideration. *Abbott* v. *Doane*, 163 Mass. 433. *Swartzman* v. *Babcock*, 218 Mass. 334. *Briskin* v. *Packard Motor Car Co. of New York*, 269 Mass. 394. Williston, Contracts (Rev. ed.) § 131A. Restatement: Contracts, § 84 (5).

There was a controversy as to whether some of the payments made by the defendant for materials and labor were for items not listed in the specifications attached to the buy and sell agreement. We assume, in the absence of anything to the contrary appearing, that the jury were fully

instructed as to the items for which the defendant was entitled to credit. The jury were not required to accept the testimony of the defendant that he had paid more than $22,500, the purchase price agreed upon with Blumit, for the house and that consequently, there being no balance due to Blumit, there was nothing due to the plaintiffs. On the other hand, there was evidence indicating that Cohen was not entitled to credit for some of the payments he contended he made. The jury had a right to find, as they impliedly did, that there was a balance due from Cohen to Blumit in the amount stated in their verdict even though that was less than the amount of the commission.

There was never any final accounting between Blumit and Cohen. There was, however, a long conference between Blumit and Cohen in the middle of February, 1950, at which Canner was present. Blumit was apparently satisfied that nothing was due him especially if Cohen was to pay the plaintiffs' commission. No further conferences were contemplated or held in reference to an accounting. In this situation the contention of the defendant, that the instant action was premature as there was no final accounting, is untenable. The plaintiffs were not required to wait until such accounting should be had when it became clear that none was to be had. Otherwise, by the action of Cohen the time would never arrive for the payment by him of the commission. *Swartzman* v. *Babcock*, 218 Mass. 334, 338.

The fact that the plaintiffs have obtained a judgment against Blumit for their commission which remains wholly unsatisfied does not bar the maintenance of the present action. There was no relationship of principal and agent, nor of assignor and assignee, between Blumit and Cohen. Cohen never accepted the written order served on him by Blumit to pay the plaintiffs. There was no novation. The instant action is based upon the breach by the defendant of an oral promise to pay the plaintiffs. That promise was separate from and independent of the promise of Blumit to pay the commission. The plaintiffs were free to proceed against either or both until their claim was paid. *Cinamon*

v. *St. Louis Rubber Co.* 229 Mass. 33, 37. *Houghton &
Dutton Co.* v. *Journal Engraving Co.* 241 Mass. 541, 545.
*Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 61.

*Exceptions overruled.*